Municipal Court of Concord,
April 2, 1940. } No. 3114.

STATE *v.* KENNETH G. MOORE.

*Gordon S. Lord*, City Solicitor, and *Richard F. Upton* (*Mr. Lord* orally), for the State.

*Dudley W. Orr* (by brief and orally), for the defendant.

ALLEN, C. J.    The ordinance is sought to be sustained as a valid exercise of the protective power.    It is not questioned that the trucking and teaming business is a legitimate occupation and employment, and the requirement of a license to engage locally in the business

is valid as a police regulation only if it may reasonably aid to serve the public welfare in some proper manner.

One claim advanced is that the ordinance is in the public interest because of its effect to control the number of those engaged in the business and thereby avoid a supply in excess of the demand. The requirement of a certificate or finding of public convenience and necessity before a license is issued is designed to accomplish this objective. But an oversupply of property or services for sale does not of itself constitute occasion to avoid it by public regulation and control of private enterprise and endeavor.

If no one may engage in a legitimate business or occupation unless there is a public need for him to do so, the loss of personal freedom is extreme. Possibly the fact that the public need may be limited has some tendency to show that the public will suffer some real and appreciable disadvantage if the supply is not limited to the need or will derive some real and appreciable advantage if only the need is supplied. The question is one of economic consideration. But whatever the advance in the scope of the due exercise of the police power, the time has not come when it may be said that legislation may prohibit entrance into a legitimate field of activity for the reason alone that sufficient in number are already engaged therein to meet the public demand for its product or service. Special reasons for enterprises such as railroads and public utilities may justify legislation of such character. But no reasons of that kind exist as to the business here under consideration. The ordinance makes no distinction between common carriers and contract carriers, and if it applied only to the former, the right to limit their number would not follow. It could hardly be successfully contended that legislation or ordinance might restrict the number of hotels or service stations for travel for the reason that no more were needed to supply the public demand.

It is suggested that a supply of truckmen and teamsters limited to public need will relieve highway congestion. It is common knowledge that trucks and job-teams locally used form but a slight part of the volume of highway traffic. Their number if unrestricted by ordinance is restricted in a practical way by the operation of the economic principle of supply and demand. Oversupply reaches a maximum, since the conduct of business at a loss is a brake on its extent. The requirement has no "manifest tendency to cure or at least to make the evil less" (*Liggett Co.* v. *Baldridge*, 278 U. S. 105, 115) in more than negligible degree.

Moreover, relief from highway congestion may not be accomplished by unfair discriminatory measures. While the use of the highways is a privilege, the privilege may not be granted arbitrarily and be bestowed at will and pleasure as a favor to some groups of travelers while imposing a deprivation of use upon others. "If some may, and others may not, enjoy the privilege, the distinction must be one which the public interest permits". *Rosenblum* v. *Griffin*, 89 N. H. 314, 321. As suggested in argument, permission of highway use for the local business of gasolene and oil trucks without restriction of numbers to their ascertained public need, while such use for other trucks and job-teams is thus restricted, displays a disregard, if not defiance, of the principle of constitutional equality. The classification between restricted and unrestricted use here resulting has no sound basis for its support. The public right, however great, is not a right to select at will, pleasure and random the objects of its regulatory control. Regulation of highways may be exercised in discretion, but the discretion must be tempered and exerted with respect for the inviolable private rights.

So far as the ordinance seeks to regulate the use of highways, it is in full parallel with the statute held void as unfairly discriminatory in *Smith* v. *Cahoon*, 283 U. S. 553.

The statute regulating highway use of motor vehicles operated in carrying goods for hire was held valid in *Welch Company* v. *State*, 89 N. H. 428; affirmed in 306 U. S. 79 although it made certain exceptions and did not apply to vehicles carrying their owners' own products of manufacture or labor. The discriminations were held reasonable upon considerations of safety of travel rather than of volume of travel. The business regulated presented special features of danger in the manner of conducting it. Regulations designed to reduce the volume of travel are proper if their discriminations can be freed from the charge of arbitrary selection. Such is not the case here, and the conclusion is consistent with that reached in the *Welch* case.

Whether the statute considered in the *Welch* case is designed to be comprehensive in its scope, as were the statutes construed in *State* v. *Angelo*, 71 N. H. 224, and *State* v. *Paille*, 90 N. H. 347, with the result of forbidding local legislation extending it to its exceptions, becomes a moot inquiry in view of the invalidity of the ordinance on other grounds.

Nor is the view here adopted in any wise in conflict with the decision, and its grounds, in *State* v. *Guertin*, 89 N. H. 126. The

ordinance there attacked made the proprietors of taxicabs, as ordinarily used, common carriers and required them to do business at established rates "honestly and accurately computed". *Ib.,* 129. Safety or volume of highway travel was not an objective. The discriminatory provisions of the ordinance were held to be based upon reasonable distinctions. The ordinance here seeks other objectives. It does not seek to regulate charges for service, and does not separate common from contract carriers. The public necessity, whether based on the claim of the need of controlling the extent of the business or on the ground of control of highway use, wholly fails to meet the constitutional guarantees of personal freedom and equality.

The requirement of the ordinance that no license shall be granted unless the applicant and his "agents" are first found "thoroughly familiar" with the topography of the city is regarded as unsupported upon any reasonable ground of validity.

It operates capriciously. It makes no demand that a licensee's agents engaged after his license is granted shall be thus familiar. After a license is issued a licensee having a number of trucks may, without violating the ordinance, engage for their operation employes having no initial acquaintance with the city's highway system. The unfairness of discrimination between drivers of the licensee in employment when the license is granted and drivers thereafter hired is too self-evident to invite discussion.

Again, if the ordinance is read without giving the word "agents" a special meaning of drivers, then drivers and other employes are treated alike in the requirement, regardless of the kind of work performed by the other employes and of any possible need of their familiarity with the highways of the city. The employer would be unduly restricted in his engagement of help. Whatever scope of meaning the word was intended to have, it would seem to include more than drivers. If drivers only were intended, it is difficult to understand why a word of definite characterization was not used instead of one broadly inclusive of all classes of persons employed.

The broader question whether the test of thorough familiarity as a condition for engaging in the business is a valid restriction upon personal liberty, is not as readily answered. It is argued that service will be better, misdeliveries fewer, and less congested streets chosen. The argument seems more assertive than impressive. Assuming Concord's population to be about 25,000 (N. H. Manual for 1939, *p.* 139), it lacks the occasion to require initial familiarity which a

metropolitan city or one of great population has. It is not perceived how thorough topographical familiarity will result in fewer mistakes of delivery. The natural interest of a truckman or teamster to furnish satisfactory service must largely offset any demand for the test of familiarity as a particular of regulatory control. The requirement is not adapted to prevent unfair competition or unreasonable business practices. It cannot be justified as a measure to exclude non-residents and persons having no locally taxable property from engaging in the business. Such a purpose or operation of the ordinance would be beyond all constitutional permission.

However, it is possible that the test may have some tendency to improve service and that the framers of the ordinance reasonably thought the public advantage in quality of service would be thereby enhanced. The imposition upon personal freedom is not serious. If it were not for the invalid operation of the requirement already pointed out, it might be sustainable. Facts and conditions may have existed which created a special situation making proper the exercise of the police power to change it for the better. See *Welch Company* v. *State*, 89 N. H. 428, 433; (affirmed in 306 U. S. 89). Only if a conclusion of conflict with the Constitution must be drawn, may the courts hold legislation, including ordinances permitted by legislation, void. The courts "cannot run a race of opinions upon points of right, reason and expediency with the law-making power." Cooley, Const. Lim., (4th *ed.*), 204.

The requirement of suitability is valid only if some special reason promotive of the public welfare exists for it as to truckmen and teamsters. The mere fact that they are in a special business is not enough. The business must have special features to permit an order for special treatment of it. Suitability in general and as here desired consists of the qualities of honesty, responsibility and efficiency. They are qualities highly desirable in the public interest. But they are desirable in every sort of activity and relation. And a general law that no one should engage in any undertaking unless first licensed to do so after being found suitable to enter upon it would run counter to the personal rights which the Federal and State Constitutions say are inviolable. The invasion of individual liberty would be too great.

So far as a special demand for suitability may be found in a particular business, occupation or activity, regulation thereof which may reasonably be thought helpful to meet the demand is proper. But if the demand is general and applicable to all business and industrial pursuits in equal force and urgency, a particular pursuit

lacking special demand therefor may not be singled out for subjection to public control. Granting that "a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts at the time the law was enacted must be assumed" (*Rast* v. *Van Deman*, 240 U. S. 342, 357), yet "the classification . . . must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike" (*Royster &c. Co.* v. *Virginia*, 253 U. S. 412, 415). "If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law." *Brown-Forman Co.* v. *Kentucky*, 217 U. S. 563, 573. Otherwise equality is denied. The equal protection of the laws is "a pledge of the protection of equal laws". *Yick Wo* v. *Hopkins*, 118 U. S. 356, 369. While "legislative authority, exerted within its proper field, need not embrace all the evils within its reach" (*National &c. Board* v. *Corporation*, 301 U. S. 1, 46), it may not by regulation suppress the evil in sporadic and random selection applying the regulation to some but not to others in the same or similar standing. If the evil is systemic, legislation prescribing localized treatment is invalid unless such treatment is specially demanded.

The importance of honesty is paramount, and the common law enforces it as a duty. Legislation may properly be enacted to prevent dishonesty. But particular occasion to regulate truckmen and teamsters for the purpose cannot be found. That their business presents special inducements, temptations and opportunities to be dishonest by reason of its special features and conditions cannot, it is thought, be a reasonable conclusion. The same reasoning applies to the elements of responsibility and efficiency. Why there may be a public demand that truckmen and teamsters should have those qualities more than others furnishing service in general of one kind and another indiscriminately, has not been pointed out and is not perceived.

In summary, a universal and all-sweeping requirement of suitability for every form of relational activity is not constitutionally permitted. Without consideration of the resulting fate of the unsuitable, the practical and real effect of the requirement would be to subordinate the guaranteed rights to the general welfare, instead of balancing them with it. Neither the guaranty of rights nor the protective power is "supreme in a sense that would deprive the other

of its effectiveness as a part of the fundamental law." *State* v. *Ramseyer*, 73 N. H. 31, 34. When a particular class of persons is placed under regulation, the classification is unfairly discriminatory unless a fair reason for it is shown. It is said that by requiring suitability, improvement of service in the business the ordinance here seeks to control will follow, inuring to the public benefit. But that may be said equally of every description of business endeavor and enterprise. Special standards are extensively needed in nearly every form of activity, and the protective power may be exerted to establish them. But the needs must be special if the standards are specially ordered. A lawful business having no special features tending to produce public harm or to prevent public benefit may not be subjected to the requirement of a license to engage in it. A license is valid only when without it some special disadvantage or loss of advantage to the public may result. Public benefit gained without regard to personal freedom cannot exist under the constitutional order that arbitrary restriction of that freedom is contrary to the public advantage. A police measure applicable to some but not to others whose relative position is the same, cannot be sustained. Equality of treatment involves reasonableness of classification.

"A state cannot, 'under the guise of protecting the public, arbitrarily interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them'. *Jay Burns Baking Co.* v. *Bryan*, 264 U. S. 504, 513." *Liggett Co.* v. *Baldridge*, 278 U. S. 105, 113. No more can a municipality.

The ordinance is adjudged void.

*Complaint quashed.*

All concurred.