Concord District Court
No. 85-165

THE STATE OF NEW HAMPSHIRE

v.

RONALD J. DEFLORIO

July 17, 1986

*Stephen E. Merrill*, attorney general (*Ronald F. Rodgers*, senior assistant attorney general, on the brief and orally), for the State.

*Joanne Green*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

*Gallagher, Callahan & Gartrell P.A.*, of Concord (*Steven J. McAuliffe* on the brief and orally), for Merrimack County and the Merrimack County Commissioners.

SOUTER, J.  The Concord District Court (*Sullivan*, J.) has transferred two questions without ruling: whether a minor charged with a misdemeanor traffic offense may be prosecuted and, upon convic-

tion, incarcerated as an adult under the authority of RSA 169-B:32 (Supp. 1985); and, if so, whether application of the statute in such a case would offend standards of equal protection or result in the imposition of cruel, unusual and disproportionate punishment. We answer that the statute constitutionally authorizes such prosecution and incarceration.

The statutory context in which these questions arise may be outlined briefly. Acts that would be misdemeanors or felonies if committed by an adult are treated as acts of delinquency if committed by a minor, RSA 169-B:1, :2, II (Supp. 1985). (Because the entire RSA chapter 169-B is printed in the supplement, further citation to Supp. 1985 will be omitted.) Charges of delinquency are litigated in the district courts independently of the adult criminal procedure, RSA 169-B:3, :6, :11, :12, :13, :14, and delinquents are normally isolated from the adult penal system. *See* RSA 169-B:15, :19, I and III.

There are two general exceptions to these provisions, however. First, when the minor's act would be a felony if committed by an adult, RSA 169-B:24 authorizes the district court to apply stated criteria in determining whether the minor should be treated as an adult; if the district court so concludes, it may certify its determination, and transfer the case to the superior court for prosecution as an adult felony. Second, RSA 169-B:32 provides that the statutory mandates of RSA chapter 169-B for special treatment of minors shall not be applied

> "to persons 16 years of age or over who are charged with the violation of a motor vehicle law, an aeronautics law, a law relating to navigation or boats, a fish and game law, a law relating to Title XIII or any town or municipal ordinance which provides for a penalty not exceeding $100 plus the penalty assessment."

The events in this case began when the defendant was sixteen. He was charged under Title XXI (Motor Vehicles) of the Revised Statutes Annotated with operating a motor vehicle after suspension of his license, RSA 263:64 (Supp. 1985), and with two instances of operating or controlling a motor vehicle in disobedience to a police officer. RSA 265:4, I(c). Each charge was treated as an adult misdemeanor complaint under RSA 169-B:32 and therefore subject to adult penalties, including incarceration in the Merrimack County House of Correction for as long as one year. RSA 625:9, IV. The Merrimack County House of Correction does not contain segregated quarters for juveniles, *see* RSA 169-B:15, and is not equipped to offer rehabilitative services to juveniles who may be incarcerated there. *See* RSA 169-B:1; *State v. Benoit*, 126 N.H. 6, 490 A.2d 295 (1985).

The trials on these charges did not occur until the defendant had turned seventeen, when he was convicted of each offense and sentenced to serve concurrent terms of thirty days at the county house of correction. The court suspended twenty-seven days of each sentence during good behavior and scheduled a later hearing to determine whether the defendant's intervening conduct would justify continued suspension. The defendant served the three days. Before the later hearing, however, he was convicted of two additional offenses. In response to these convictions, the district court imposed a further portion of the original sentences, by ordering the defendant to serve four consecutive weekends in the house of correction, with service of the remainder of the original sentences again deferred.

When the defendant presented himself to serve the first weekend, the staff of the house of correction expressed concern, for the first time, that the defendant was a minor, and they refused to admit him. Communications followed, among the county commissioners, the administrator of the house of correction, the county attorney, the Office of the Attorney General and the district court, all culminating in a hearing at which the pending questions were raised and transferred.

The district court treated the county as an intervenor, and in the proceeding before us the county argues that RSA 169-B:32 either is inapplicable to motor vehicle misdemeanors or would be unconstitutional if so applied, positions with which the defendant naturally concurs. The State argues for the applicability and constitutionality of the statute.

■ Before reaching the merits, we note two issues that apparently were never raised before the district court. First, it is not self-evident that a county, or any other subsidiary governmental unit, has standing to oppose the State, represented by the attorney general, over the enforceability of a penal statute. *See* RSA 7:6. Second, we do not countenance the present amorphous process by which the defendant and the county challenge the legality and constitutionality of a sentence outside the procedures of appeal or petition for writ of habeas corpus. When we accepted the case, the procedural anomaly was not as apparent as it is now, and we caution future litigants not to follow the course exemplified here.

The first substantive issue before us involves the scope of RSA 169-B:32. The defendant and the county argue that the statute may be construed to permit the prosecution of a sixteen or seventeen-year-old for a non-penal motor vehicle offense, but should not be read as reflecting a legislative intent to subject such juveniles to a penalty potentially as serious as the one year incarceration possible

for a misdemeanor. They emphasize the underlying purposes of RSA chapter 169-B, to provide confidentiality and thus to promote the rehabilitation of juvenile offenders, who would otherwise be objects of the public opprobrium engendered by the adult criminal process. *See State v. Smagula*, 117 N.H. 663, 667, 377 A.2d 608, 610 (1977). The defendant and the county lay particular stress on the general legislative objective to segregate those minors who are entitled to the benefits of the statute from the adult offenders who form the population of jails and houses of correction. *See* RSA 169-B:15, :19, I and III.

On the basis of such premises, the defendant and the county argue that the legislature must have intended minors over sixteen to be treated as adults in motor vehicle cases only when charged with a violation, which carries no possibility of incarceration. *See* RSA 651:2, III. There are, however, three dispositive hurdles standing in the way of this conclusion.

First, the language of section 32 conditions its application on the subject of the offense, not on the penalty that may be imposed, and refers to offenses in addition to the motor vehicle laws that are punishable by incarceration. *See, e.g.*, RSA 422:35 (1983 & Supp. 1985) (penalties for violations of aeronautics act); RSA 207:46 (1977 & Supp. 1985) (penalties for violations of fish and game laws); RSA 182:1 (penalties for violation of alcoholic beverage laws). To construe section 32 as inapplicable whenever incarceration could result would therefore narrow the statute so radically as to violate the first principle of statutory interpretation, that of respect for the legislature's language. *See State Employees' Ass'n of N.H. v. State*, 127 N.H. 565, 568, 503 A.2d 829, 831–32 (1986). That language aptly expresses an intent to dispense with the benefits of the juvenile statute, even when incarceration in a house of correction may result.

Second, the argument for narrow reading runs against *State v. Doe*, 116 N.H. 646, 365 A.2d 1044 (1976), which held that identical language in the predecessor statute was intended to subject minors over sixteen to adult process and penalties, including incarceration, in motor vehicle cases. In *Doe*, the court noted that such had been the legislative purpose since the enactment of Laws 1945, 23:1. *Doe, supra* at 648, 365 A.2d at 1045–46. The legislature has not manifested a change of mind since *Doe* was decided.

■ Third, the court stated in considered dictum only two years ago that "[i]t is only in those unusual situations when an offense is both a felony *and* arguably a 'motor vehicle violation' that the policies of RSA chapter 169-B . . . and RSA 169-B:32 . . . clash." *State v. Smith*, 124 N.H. 509, 513, 474 A.2d 987, 989 (1984) (emphasis in

original). In *Smith* the court concluded that the dispensation from RSA chapter 169-B protections under section 32 was not so broad as to apply to felony charges under the motor vehicle laws. The court emphasized that the potential consequences of a felony conviction, including a three and one-half to seven year state prison sentence, were so sharply inconsistent with the general objectives of the chapter that the legislature could not have intended to subject any minor to such consequences without independent judicial certification of the minor as an adult. However, in the language quoted above from *Smith*, the court also made it plain that it inferred no broad legislative purpose to restrict section 32 to non-penal violation cases. We adhere to the same view today. We believe it is likely that the legislature intended to treat minors over sixteen as adults in cases like this, for reasons that we will explain in our discussion of the equal protection issue, below. Suffice it to say here that we find no basis to constrict the ambit of section 32 even more narrowly than *Smith* did.

Given our construction of the statute, we now deal with the challenges to its constitutionality, starting with the claim that it violates the defendant's right to the equal protection of the laws as guaranteed by part I, article 12 of the Constitution of New Hampshire and by the fourteenth amendment of the Constitution of the United States. The equal protection claim rests on the fact that minors over sixteen who commit motor vehicle misdemeanors are treated differently from minors who commit most other misdemeanors or who commit felonies of any sort. Thus, minors who commit misdemeanors that are not violations of motor vehicle laws, or the other laws or ordinances listed in the section 32 exception, must be treated as juveniles under RSA chapter 169-B; there is no provision for treating them as adults under any circumstances. *But see* RSA 169-B:19. Minors who commit felonies of any sort may be treated as adults only after a judicial determination based on the criteria listed in RSA 169-B:24. The only minors who are automatically treated as adult criminal defendants, subject to incarceration with other adults, are minors aged sixteen or over who commit motor vehicle misdemeanors, or misdemeanors of the other sorts listed in section 32. The defendant and the county argue that this is an impermissible classification.

■ Although the defendant appears to assume that the equal protection claim must be judged under the so-called middle tier test of *Carson v. Maurer*, 120 N.H. 925, 932, 424 A.2d 825, 830–31 (1980) (reasonable, not arbitrary, having fair and substantial relation to legislative object), we agree with the county that the rational basis

test is the appropriate one to apply in assessing both the State and the federal claim. *See State v. Scoville*, 113 N.H. 161, 163–64, 304 A.2d 366, 368–69 (1973) ("reasonable, not arbitrary [having a] fair and substantial relation" test assumed to be equivalent to rational basis test; classification of seventeen-year-old violators as adult criminals is rational and consistent with constitutional principles). *See also Jones v. United States*, 103 S. Ct. 3043, 3049 (1983) (rational basis test applied to classification affecting liberty interests when challenged under equal protection aspect of fifth amendment); *Stokes v. Fair*, 581 F.2d 287, 289 (1st Cir. 1978) ("there is no constitutional right to any preferred treatment as a juvenile offender"), *cert. denied*, 439 U.S. 1078 (1979); *United States v. Quinones*, 353 F. Supp. 1325, 1328 (D.P.R. 1973) ("reasonable . . . not arbitrary . . . having fair and substantial relation" test apparently assumed to be equivalent to rational basis test; statutory distinction between crimes punishable by death or life imprisonment, in which attorney general lacks discretion to proceed against juvenile as juvenile delinquent, and other crimes does not violate equal protection), *aff'd*, 516 F.2d 1309 (1st Cir.), *cert. denied*, 423 U.S. 852 (1975); *State v. Hart*, 89 Wis. 2d 58, 277 N.W.2d 843 (1979) (rational basis justifies separate classification of children over sixteen who violate the motor vehicle code and those who violate other provisions of the criminal statutes).

■ Applying that test, we ask whether the classification can be said to rest on any rationally justifiable distinction, *see Peters v. University of N.H.*, 112 N.H. 120, 121, 289 A.2d 396, 397 (1972); *McGowan v. Maryland*, 366 U.S. 420, 425–26 (1961). We believe that such a justification is obvious. The State will license a driver who has reached sixteen and has taken a driver training course, RSA 263:19. In licensing such a driver, the State may reasonably demand not only physical skill but also enough social responsibility to respect the rules of the road. Meeting that demand for responsibility requires control over impulsiveness. A teenage driver who lacks self-control, however, is not likely to be deterred from wild driving by a fear of the least restrictive rehabilitative alternative under the juvenile law. *See* RSA 169-B:19. The legislature could therefore conclude that the only effective deterrent is fear of adult penalties. In so concluding, the legislature and the courts have long agreed that "when a minor assumes responsibility for the operation of so potentially dangerous an instrument as an automobile, he should . . . assume responsibility for its careful and safe operation in light of adult standards." *Daniels v. Evans*, 107 N.H. 407, 408, 224 A.2d 63, 64–65 (1966) (citing Restatement (Second) of Torts § 283A com-

ment c (1966); 2 F. HARPER AND F. JAMES, THE LAW OF TORTS § 16.8, at 926 (1956); W. PROSSER, LAW OF TORTS 159 (3d ed. 1964)). Fairness therefore combines with practical necessity in rationally justifying the distinction that the defendant and the county have challenged.

There remain the related claims that incarceration of a sixteen or seventeen-year-old minor with adult prisoners is cruel and unusual punishment, violating the eighth and fourteenth amendments, and is unreasonably disproportionate to the misdemeanor offenses charged, violating part I, article 18 of the State Constitution. In raising these claims, neither the defendant nor the county asserts that the conditions at the house of correction are inhumane or in any sense comparable to the reprehensible circumstances described in *Swansey v. Elrod*, 386 F. Supp. 1138 (N.D. Ill. 1975), or in *Inmates of Boys' Training School v. Affleck*, 346 F. Supp. 1354 (D.R.I. 1972), cited in the county's brief. They argue, rather, that it is the mere exposure to adult county prisoners, and the lack of any juvenile rehabilitative services, that amount to State and federal constitutional violations.

We can only say that the argument at best obscures the line between what may be undesirable and what is cruel, unusual or disproportionate. Given the societal interests that we have identified, it may or may not be wise to incarcerate older juvenile misdemeanants with adult offenders. But

> "in assessing a punishment selected by a democratically elected legislature against the constitutional measure, we presume its validity. We may not require the legislature to select the least severe penalty possible so long as the penalty selected is not cruelly inhumane or disproportionate to the crime involved. And a heavy burden rests on those who would attack the judgment of the representatives of the people.
>
> This is true in part because the constitutional test is intertwined with an assessment of contemporary standards and the legislative judgment weighs heavily in ascertaining such standards."

*Gregg v. Georgia*, 428 U.S. 153, 175 (1976).

Nothing in the record before us even arguably overcomes this presumption of validity. Mixing older juveniles with adults can not reasonably be seen as a *per se* violation of "contemporary standards" or "basic notions of human dignity," amounting to cruel and unusual punishment. *State v. Farrow*, 118 N.H. 296, 302, 386 A.2d

808, 812 (1978) (citing *Gregg v. Georgia, supra* at 182, and *Trop v. Dulles*, 356 U.S. 86, 100–01 (1958)). If it were such a violation, it would be just as unconstitutional to treat a minor as an adult following certification under RSA 169-B:24 in a felony case. Nor can such a practice be seen as producing the "gross disproportionality" between penalty and offense that part I, article 18 of our own constitution forbids. *See State v. Elbert*, 125 N.H. 1, 15, 480 A.2d 854, 862 (1984).

There is no constitutional bar to the application of RSA 169-B:32.

*Remanded.*

All concurred.