Merrimack
No. 90-377

RORY J. BRANNIGAN

v.

HOWARD R. USITALO & a.

March 13, 1991

*Hale and Dorr*, of Manchester and of Boston, Massachusetts (*Joan A. Lukey* and *Richard V. Wiebusch* on the brief, and *Ms. Lukey* orally), for the plaintiff.

*Orr and Reno P.A.*, of Concord (*Bradford W. Kuster* and *Lisa Snow Wade* on the defendants' joint brief, and *Mr. Kuster* orally for all defendants), for defendants Thomas J. Ferraro, Dennis J. Card, and Concord Urology P.A.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Marc R. Scheer* on the defendants' joint brief), for defendant Howard R. Usitalo.

*Sulloway Hollis & Soden*, of Concord (*Robert J. Lanney* on the defendants' joint brief), for defendant Concord Hospital, Inc.

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Bruce W. Felmly* and *Judith A. Fairclough* on the brief), by brief for the New Hampshire Trial Lawyers Association, as *amicus curiae*.

*Sulloway Hollis & Soden*, of Concord (*Martin L. Gross* and *Tracy D. Hill* on the brief), by brief for New Hampshire Coalition for Affordable & Available Insurance Protection, as *amicus curiae*.

JOHNSON, J.   On interlocutory transfer without ruling from the Superior Court (*Manias*, J.), pursuant to Supreme Court Rule 9, the plaintiff, Rory Brannigan, challenges the constitutionality of RSA 508:4-d (Supp. 1990), which limits damages recoverable for non-economic loss in a personal injury action to $875,000. The superior court approved for transfer, and we accepted, the following questions:

"(1) Does the statute violate the Plaintiff's equal protection rights as guaranteed by Part I, Article 12 of the New Hampshire Constitution?

(2) Does the statute violate the Plaintiff's right to due process of the law as guaranteed by Part I, Article 14 of the New Hampshire Constitution?

(3) Does the statute violate Part I, Article 20 of the New Hampshire Constitution which guarantees the Plaintiff an opportunity to have the measure and extent of his damages determined and awarded by jury verdict?"

We conclude that RSA 508:4-d (Supp. 1990) violates the equal protection provisions of the State Constitution; we therefore do not address questions numbered (2) and (3).

Brannigan brings this case as a result of alleged improper medical treatment rendered to him by the defendants during June and July of 1987. He filed a petition for declaratory judgment and damages on November 6, 1989, alleging that he suffered extreme physical and emotional injuries as a result of the defendants' negligence, gross negligence, and willful and wanton conduct. Moreover, he asked that RSA 508:4-d (Supp. 1990) be declared unconstitutional. A trial has not yet been held on the issue of the defendants' culpability, and we are in no position to predict a jury's verdict in this case. However, we acknowledge the possibility that, given the extraordinary character of Brannigan's alleged injuries, a jury finding for Brannigan might award him non-economic damages in excess of the $875,000 statutory cap. Because resolution of this issue will undoubtedly have a

substantial effect on the parties' evaluation of this case for purposes of settlement, we determined to exercise our discretion to accept this interlocutory transfer.

Disposition of this interlocutory transfer requires us to revisit *Carson v. Maurer*, 120 N.H. 925, 424 A.2d 825 (1980), in which we held a $250,000 cap on non-economic damages in medical malpractice cases violative of the New Hampshire Constitution's equal protection guarantees. *Id.* at 941–43, 424 A.2d at 836–38. Brannigan argues that *Carson* is dispositive of this case. The defendants, on the other hand, argue that this case is distinguishable from *Carson* because (1) the cap here is three and one-half times as high as the cap in *Carson*, and (2) the *Carson* statute applied only to medical malpractice claimants, whereas RSA 508:4-d (Supp. 1990) applies to all personal injury claimants. The New Hampshire Coalition for Affordable & Available Insurance Protection (the Coalition), writing as *amicus curiae* in support of upholding the constitutionality of RSA 508:4-d (Supp. 1990), argues in its brief that "*Carson*'s legal antecedents are questionable and its scholarship unsound," and apparently urges us to overrule that decision. We agree with Brannigan that *Carson* is compelling authority in this case.

■ We are persuaded that the doctrine of judicial deference to precedent, *stare decisis*, controls our decision in this case. This doctrine "is essential if case-by-case judicial decision-making is to be reconciled with the principle of the rule of law, for when governing legal standards are open to revision in every case, deciding cases becomes a mere exercise of judicial will, with arbitrary and unpredictable results." *Thornburgh v. American College of Obstetricians*, 476 U.S. 747, 786–87 (1986) (White, J., dissenting). It "is a doctrine that demands respect in a society governed by the rule of law." *Akron v. Akron Center for Reproductive Health*, 462 U.S. 416, 420 (1983). Although not binding on a constitutional question, the doctrine of *stare decisis* is compelling when the earlier case: (1) was joined by a strong majority of the court; (2) has been "repeatedly and consistently . . . accepted and applied" by the court that decided it; and (3) was "considered with special care." *Id.* at 420 n.1.

*Carson* was a unanimous decision and has been repeatedly and consistently accepted and applied by this court. *See, e.g., City of Dover v. Imperial Cas. & Indemn. Co.*, 133 N.H. 109, 116, 575 A.2d 1280, 1284 (1990); *Stewart v. Farrel*, 131 N.H. 458, 462, 554 A.2d 1286, 1288 (1989); *Hodgdon v. Weeks Mem. Hosp.*, 128 N.H. 366, 368–69, 515 A.2d 1199, 1200–01 (1986); *Coffey v. Bresnahan*, 127 N.H.

687, 693, 506 A.2d 310, 314 (1986); *Opinion of the Justices*, 126 N.H. 554, 559, 493 A.2d 1182, 1186 (1985); *State v. Brosseau*, 124 N.H. 184, 197, 470 A.2d 869, 877 (1983) (Douglas and Batchelder, JJ., concurring specially); *Heath v. Sears, Roebuck & Co.*, 123 N.H. 512, 524–27, 464 A.2d 288, 294–95 (1983); *Henderson Clay Prod's, Inc. v. Edgar Wood & Assoc's, Inc.*, 122 N.H. 800, 801, 451 A.2d 174, 175 (1982); *Arsenault v. Abbott Furniture Corp.*, 122 N.H. 521, 522, 446 A.2d 1174, 1175 (1982). Moreover, courts from other jurisdictions have cited *Carson* with approval. *See, e.g., Trujillo v. City of Albuquerque*, 798 P.2d 571, 576–78 (N.M. 1990) (classification of tort victims held violative of State equal protection under middle-tier scrutiny); *Duren v. Suburban Community Hospital*, 482 N.E.2d 1358, 1363 (Ohio Com. Pl. 1985) (holding general damages cap violative of equal protection under minimum scrutiny); *Lucas v. United States*, 757 S.W.2d 687, 692 (Tex. 1988) (cap on non-economic damages held violative of State "open courts" provisions, quoting *Carson*); *Condemarin v. University Hospital*, 775 P.2d 348, 354 (Utah 1989) (favoring middle-tier scrutiny of legislation impinging on right to recover for negligently caused injuries).

*Carson*, spanning twenty-two pages of the New Hampshire Reports, was "considered with special care." It was decided after considering the oral and written arguments of nine law firms and one individual appearing *pro se*, and the legal analyses of *Carson* were considered and performed carefully. We will review the substance of the opinion in depth, in light of the Coalition's assertion that "*Carson's* legal antecedents are questionable and its scholarship unsound."

The plaintiffs in *Carson* presented several challenges to RSA chapter 507-C (Supp. 1979), a "tort reform" package intended in part to stabilize insurance rates and improve the availability of adequate liability insurance. *Carson*, 120 N.H. at 930–31, 941, 424 A.2d at 829–30, 836. Noting that the legislation impinged upon the plaintiffs' right to be indemnified for personal injuries, we held that, "[a]lthough the right to recover for personal injuries is not a 'fundamental right,' it is nevertheless an important substantive right." *Carson*, 120 N.H. at 931–32, 424 A.2d at 830. This statement of principle is the heart of *Carson*. It was undeniably a case of first impression for New Hampshire; however, we cannot find fault with it. The principle had been adopted in other jurisdictions, *see Briscoe Co. v. Rutgers*, 130 N.J. Super. 493, 500, 327 A.2d 687, 690 (1974); *Hunter v. North Mason School Dist.*, 85 Wash. 2d 810, 814, 539 P.2d 845, 848 (1975).

█ Having concluded in *Carson* that the right to recover for personal injuries is an important substantive right, we decided that "the rights involved [t]herein [were] sufficiently important to require that the restrictions imposed on those rights be subjected to a more rigorous judicial scrutiny than allowed under the rational basis test." *Carson*, 120 N.H. at 932, 424 A.2d at 830. Again, we can find no error in that holding.

█ In *Carson*, we articulated the standard to be applied when a statute created classifications interfering with a person's right to recover; the classifications "'must be reasonable, not arbitrary, *and* must rest upon some ground of difference having a fair and substantial relation to the object of the legislation,' in order to satisfy State equal protection guarantees." *Carson*, 120 N.H. at 932, 424 A.2d at 831 (citations omitted) (emphasis in the original). This standard was specifically designed to perform a "more rigorous judicial scrutiny."

The defendants and the Coalition assert that the cases cited in *Carson* in support of this "middle-tier" standard in fact used the "fair and substantial relation" language while performing *minimum* scrutiny of statutory classifications. The defendants suggest that the "new" standard articulated in *Carson* was actually the old minimum scrutiny rational relation test, and that therefore we should apply only minimum scrutiny in our determination of RSA 508:4-d's constitutionality. The Coalition, on the other hand, apparently argues for an overruling of *Carson* in the face of these "questionable antecedents" and "unsound scholarship." We reject these positions. None of the four cases cited by *Carson* in support of the middle-tier standard indicated whether it was employing a minimum, middle-tier, or strict scrutiny standard. All of them simply used the "fair and substantial relation" standard without labeling it. *See F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920); *State v. Scoville*, 113 N.H. 161, 163, 304 A.2d 366, 369 (1973); *Allen v. Manchester*, 99 N.H. 388, 390–91, 111 A.2d 817, 819 (1955); *State v. Moore*, 91 N.H. 16, 22, 13 A.2d 143, 148 (1940). Although it is admittedly as difficult to assume that these cases applied a middle-tier scrutiny standard as it is to assume that they applied a minimum scrutiny standard, we plainly stated in *Carson* that we intended to employ *less* than strict scrutiny, but "*more* rigorous judicial scrutiny than allowed under the rational basis test." *Carson*, 120 N.H. at 931–32, 424 A.2d at 830 (emphasis added). This can only mean that we intended the words "reasonable, not arbitrary" and "fair and substantial relation" to be a middle-tier scrutiny standard. Our cases have reflected this understanding in

the years since *Carson. See, e.g., City of Dover*, 133 N.H. at 121–23, 575 A.2d at 1287–88 (Souter and Thayer, JJ., acknowledging in dissent that right to recover subject to middle-tier scrutiny); *State v. Deflorio*, 128 N.H. 309, 314, 512 A.2d 1133, 1136 (1986) (labeling *Carson* standard as "the so-called middle tier" test).

We next elaborated on the requirement that the classifications "must be reasonable, not arbitrary," phrasing it in terms of a balancing test: "Whether the malpractice statute can be justified as a reasonable measure in furtherance of the public interest depends upon whether the restriction of private rights sought to be imposed is not so serious that it outweighs the benefits sought to be conferred upon the general public." *Carson*, 120 N.H. at 933, 424 A.2d at 831. Neither the defendants nor the Coalition question this standard, and likewise we find no fault with it.

Ending the discussion of the legal standards involved in the case, we explained in *Carson* that in the middle-tier context, we assume that the object of the legislation is proper, and so defer to the legislature when reviewing its factual findings. *Id.* Thus, we concluded that the only two questions before the court were: (1) "whether the statute has a fair and substantial relation to this legitimate legislative objective;" and (2) "whether it imposes unreasonable restrictions on private rights." *Carson*, 120 N.H. at 933, 424 A.2d at 832.

The Coalition argues that we merely paid "lip service" to the concept of judicial deference to legislative findings, and disregarded the legislature in our determination that the statute did not bear a "fair and substantial relation" to the object of the legislation. *See City of Dover*, 133 N.H. at 122–23, 575 A.2d at 1288 (Souter and Thayer, JJ., dissenting). In the middle-tier context, however, the only legislative findings entitled to great deference are those relating to the *object* of the legislation. If a court were to defer to a legislature's findings that the statute bore a "fair and substantial relation" to the object of the legislation, it would be abdicating its judicial role. "[W]e simply note that this is a power properly attached to the judicial and not the legislative branch of government." *Lucas v. United States*, 757 S.W.2d at 691.

After determining the appropriate law to be used in *Carson*, we applied it to the $250,000 cap on non-economic damages. We held that the statute failed the "fair and substantial relation" test for two reasons: "'First, paid-out damage awards constitute only a small part of total insurance premium costs. Second, and of primary importance, few individuals suffer non-economic damages in excess of

$250,000.'" *Carson*, 120 N.H. at 941, 424 A.2d at 836 (citation omitted). Logically, even fewer individuals suffer non-economic damages in excess of $875,000 than suffer such damages in excess of $250.000. We find no error in this determination, and neither the defendants nor the Coalition argue that it was improper.

Finally, *Carson* performed a balancing test to determine the reasonableness of the statutory classifications. Noting that the cap distinguished "'between malpractice victims with non-economic losses that exceed $250,000 and those with less egregious non-economic losses,'" we held that "[i]t is simply unfair and unreasonable to impose the burden of supporting the medical care industry solely upon those persons who are most severely injured and therefore most in need of compensation." *Carson*, 120 N.H. at 941–42, 424 A.2d at 837 (citations omitted). Although the Coalition argues that the latter statement indicates a failure of this court to defer to legislative findings, as we have noted above, a court need only defer to the legislature's determination that the *object* of the legislation is proper. *Carson* correctly held that the statute failed the balancing test.

■ In sum, *Carson* was well-reasoned and "considered with special care," was the product of a unanimous court, and has been "repeatedly and consistently . . . accepted and applied" by this court. *Akron*, 462 U.S. at 420 n.1. Thus, we hold that the doctrine of *stare decisis* controls our decision in this case. We address only those arguments made by the defendants and the Coalition that are aimed at distinguishing *Carson* from the case before us, and decline to perform a comprehensive equal protection analysis of RSA 508:4-d (Supp. 1990).

The defendants and the Coalition argue that this case is distinguishable from *Carson* because the cap in RSA 508:4-d (Supp. 1990) applies to victims of *all* personal injuries, whereas the statute at issue in *Carson* applied only to victims of medical malpractice. We disagree. First, and most important, the language of *Carson* evinces a rejection of *the cap itself*, and not merely a concern that medical malpractice victims were subject to a cap while other tort victims were not. We agreed with the plaintiffs' contention that the cap "preclude[d] only the most seriously injured victims of medical negligence from receiving full compensation for their injuries," and focused on the distinction "'between malpractice victims with non-economic losses that exceed[ed] $250,000 and those with less egregious non-economic losses.'" *Carson*, 120 N.H. at 941, 424 A.2d at 837 (citations omitted).

■    Moreover, we stated at the outset that "the right to recover for personal injuries is . . . an important substantive right," without distinguishing medical malpractice injuries from other personal injuries. *Carson*, 120 N.H. at 931–32, 424 A.2d at 830. In the years following *Carson*, we have consistently interpreted the *Carson* standard as applicable to *all* types of personal injuries. *See, e.g., City of Dover*, 133 N.H. at 116, 121, 575 A.2d at 1284, 1287; *Heath v. Sears, Roebuck & Co.*, 123 N.H. at 524–25, 464 A.2d at 294; *Henderson Clay Prod's v. Edgar Wood & Assoc's*, 122 N.H. at 801–02, 451 A.2d at 175. Thus, *Carson* cannot be distinguished on this basis.

The defendants also argue that *Carson* is distinguishable because the damages cap of $875,000 is three and one-half times as high as the $250,000 cap at issue in *Carson*. The $875,000 cap, they assert, is constitutional because it would burden the rights of fewer tort claimants than the $250,000 cap. Thus, the defendants argue that the balancing test articulated in *Carson* is more easily met here because "the restriction of private rights sought to be imposed is not so serious that it outweighs the benefits sought to be conferred upon the general public." *Carson*, 120 N.H. at 933, 424 A.2d at 831. Again, we disagree.

Although fewer tort plaintiffs would be affected by a $875,000 cap than by a cap of $250,000, it seems to us even *more* "unfair and unreasonable to impose the burden of supporting the [insurance] industry solely upon those persons who are [even *more*] severely injured and therefore [even *more*] in need of compensation." *Carson*, 120 N.H. at 942, 424 A.2d at 837. Moreover, if the "fair and substantial relation" test could not be met because "few individuals suffer noneconomic damages in excess of $250,000," *Carson*, 120 N.H. at 941, 424 A.2d at 836, we fail to understand how a cap of $875,000 could meet the test, simply because even fewer individuals would be affected by the higher cap. Finally, we note that society, through the courts, has developed a remedy to secure itself from the ills of a "run-away" jury that has imposed a disproportionally high award. That remedy is remittitur, to be exercised in the sound discretion of the trial court. *Hanlon v. Pomeroy*, 102 N.H. 407, 157 A.2d 646 (1960).

■    RSA 508:4-d (Supp. 1990) is hereby declared unconstitutional. The case is remanded to the trial court.

*Remanded.*

All concurred.