Means v. Shyam Corporation            CV-97-212-JM  01/27/99  P

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>JESSICA MEANS</u>

    v.                                              Civil No. 97-212-JM

<u>SHYAM CORPORATION</u>

### O R D E R

    Plaintiff in this Title VII sexual harassment case has filed a motion to amend the judgment to reinstate the full jury verdict in the amount of $637,500.00 and to hold the cap on damages imposed by 42 U.S.C. § 1981a(b)(3)(A) to be unconstitutional. Plaintiff alleges that the cap, as applied to her, violates her equal protection rights by creating a distinction between sexual harassment victims and all other tort victims, or between victims based on the number of employees of the offending employer. Defendant objects on the basis that the statutory cap bears a rational relationship to a legitimate governmental interest. Because the statutory cap has a rational relationship to a legitimate interest, 42 U.S.C. § 1981a(b)(3)(A) is constitutional, and the motion to amend is denied.

### Background

    Plaintiff, Jessica Means, filed this action against her former employer, Shyam Corporation, alleging, <u>inter alia</u>, that her supervisor had sexually harassed her.  The evidence demonstrated that defendant employed more than 14 employees for

the requisite time period. Plaintiff did not dispute defendant's claim that it employed fewer than 101 employees.

Plaintiff's sexual harassment claim against the defendant was tried to a jury in October 1998. Upon completion of the trial, on October 9, 1998, the jury awarded plaintiff $637,500.00 in damages. According to a special verdict form (document no. 77), the award consisted of $37,500.00 in compensatory damages and $600,000.00 in punitive damages. In accordance with 42 U.S.C. § 1981a(b)(3)(A), a form of judgment was entered on October 19, 1998 (document no. 78), which reduced the damage award to $50,000.00.

On October 29, 1998, plaintiff filed her motion to amend the judgment (document no. 80), in which she seeks reinstatement of the full verdict in the amount of $637,500.00. Plaintiff contends that the statutory cap is unconstitutional under the Equal Protection Clause.

Specifically, plaintiff argues that the statute creates impermissible distinctions between sexual harassment victims and other tort victims, and among classes of victims based on the number of employees of the offending employer. Plaintiff contends that the statute should be subjected to heightened scrutiny under the Equal Protection Clause, and that it does not pass constitutional muster under such a standard. Defendant

opposes the motion.

## Discussion

Plaintiff challenges the constitutionality of the cap on punitive and compensatory damages imposed in 42 U.S.C. § 1981a(b)(3)(A), which, as applied in this case, caps the damage award at $50,000.00.[1]  There is little authority which deals directly with this question.  What authority exists favors constitutionality of the cap.  See, e.g., Passantino v. Johnson & Johnson Consumer Prods., Inc., 982 F. Supp. 786, 788 (W.D. Wash. 1997).  In addition, the Supreme Court has consistently held that an equal protection claim, absent reliance on a fundamental right or suspect classification, is subject to review under the rational relationship test.  See, e.g., Duke Power Co. v. Carolina Envtl. Study Group, Inc., 438 U.S. 59, 83 (1978).  Legislation subject to rational basis review is presumptively constitutional.  See McGowan v. Maryland, 366 U.S. 420, 426

---

[1]42 U.S.C § 1981a(b)(3)(A) provides:

The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party -

(A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of the 20 or more calendar weeks in the current or proceeding calendar year, $50,000....

(1961).

Here, the plaintiff does not argue that a fundamental right is implicated; nor are any such rights implicated here. Fundamental rights are those rights explicitly or implicitly guaranteed by the constitution. See San Antonio Indep. School Dist. v. Rodriguez, 411 U.S. 1, 33-34 (1973); see also Ethridge v. Medical Ctr. Hosps., 376 S.E.2d 525, 530 (Va. 1989) (listing such fundamental rights). The right of a sexual harassment victim to a recovery of more than $50,000.00 in compensatory and punitive damages is not encompassed within the category of fundamental rights.

Plaintiff also does not specifically contend that there is a suspect or quasi-suspect classification at issue. The Supreme Court has recognized the suspect classifications of race, national origin, and alienage. See City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 440 (1985). The classifications of gender and legitimacy are considered quasi-suspect. See Craig v. Boren, 429 U.S. 190, 197 (1976); see also Lalli v. Lalli, 439 U.S. 259, 265 (1978). Here, the pertinent classification is defined by plaintiff as sexual harassment victims or victims of an offending employer having between 14 and 101 employees.[2]

_____

[2]While plaintiff describes the class as including only sexual harassment victims, in fact, the Civil Rights Act of 1991 also applies to other types of intentional employment

-4-

The first classification is composed of those individuals who have been sexually harassed under Title VII. The second classification described by plaintiff is composed of victims of sexual harassment employed by offending employers having between 14 and 101 employees. These groups are not composed solely of a suspect or quasi-suspect classification, but in fact potentially include everyone who is employed, regardless of their race, national origin, legitimacy, or gender. Cf. Oncale v. Sundowner Offshore Servs., Inc., 118 S. Ct. 998, 1003 (1998) (same sex sexual harassment is actionable under Title VII). Employees are not a recognized suspect class. As a result, the appropriate standard to apply to this issue of constitutionality is the more liberal rational relationship standard.

Under the rational relationship standard, also called the rational basis test, a statute must be upheld if it is reasonably related to a valid legislative purpose. See Duke Power Co., 438 U.S. at 83. Economic regulation, that is, a legislative effort to structure and accommodate the burdens and benefits of economic life, is upheld absent proof of arbitrariness or irrationality on

discrimination, including cases involving gender, religion or disability. See 42 U.S.C. § 1981a(a); see also McKinnon v. Kwong Wah Restaurant, 83 F.3d 498, 506 (1st Cir. 1996). Since this distinction is of no consequence for my analysis, for convenience, I will describe the class in this decision using plaintiff's imprecise characterization.

-5-

the part of Congress. See id. If the classification relates to a proper governmental purpose, then the classification will be upheld. See id.

If the classification has some reasonable basis, it does not offend the Constitution simply because the classification is not made with mathematical precision or because, in practice, it may result in some inequality. See Dandridge v. Willams, 397 U.S. 471, 485 (1970). When the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern. See Personnel Administrator of Mass. v. Feeney, 442 U.S. 256, 272 (1979). The legislative history of the statute at issue manifests a legitimate purpose for the legislation. Prior to the enactment of the Civil Rights Act of 1991, remedies for a successful plaintiff were limited to the equitable remedies of injunctive relief, including reinstatement, back pay, lost benefits, attorney's fees, and litigation costs under 42 U.S.C § 2000e-5(g)(1). See Schanzer v. Rutgers Univ., 934 F. Supp 669, 677 (D.N.J. 1996). The Civil Rights Act of 1991 augmented the available remedies to include compensatory damages for nonpecuniary losses and for future pecuniary losses and punitive damages. See id.; see also DeNovellis v. Shalala, 124 F.3d 298, 307 (1st Cir. 1997). The dual purpose of the Act was to counter

difficulties encountered by victims in proving intangible elements of injury, such as lost wages and other benefits, see United States v. Burke, 504 U.S. 229, 241 n.12 (1992) (citing H.R. Rep. No. 102-40(II), at 25 (1991)), and to increase the deterring effect on employers, see id. at 254 (O'Connor, J. and Thomas, J., dissenting) (citing Pub. L. No. 102-166, § 2, 105 Stat. 1071 (1991)).

Congress capped the amount of damages available under the Civil Rights Act of 1991 in order to deter frivolous lawsuits and to protect employers from financial ruin as the result of unusually large awards. See Luciano v. Olsten Corp., 110 F.3d 210, 221 (2d Cir. 1996) (citing legislative history). These caps vary according to the size of the employer. See 42 U.S.C. § 1981a(b)(3)(A-D). Using the size of the employer as an approximation of the company's net worth, Congress struck a balance between the interests of full compensation and deterrence and the interests in preserving the viability of small businesses and their ability to provide jobs to the workforce. See Hamlin v. Charter Township, 965 F. Supp. 984, 988 (E.D. Mich. 1997) ("the purpose of § 1981a(b)(3) is to limit liability for compensatory damages based on the relative size of the employer, as a proxy for its ability to pay"). The rationale for varying the amount of recoverable damages based on employer size was to

protect small businesses.

Congress also had before it information suggesting that the number of employment discrimination cases could increase with the increase in available damages. See H.R. Rep. No. 102-40(I), at 144-51 (1991), reprinted in 1991 U.S.C.C.A.N. 549, 676-80 (minority views). In other words, the Civil Rights Act of 1991 was projected to potentially increase litigation and damage awards against employers, specifically, as opposed to tort feasors, generally. Congress' differential treatment of victims of certain employment claims versus other tort victims is thus rationally related to its interests in deterring frivolous suits and avoiding ruinous awards in certain employment discrimination suits.

The Supreme Court, in an analogous case, has noted that when Congress strikes a balance between a victim's right to recover noneconomic damages and society's interest in protecting certain businesses from ruinously large awards, it is engaging in its fundamental role of structuring and accommodating the benefits of economic life. See Duke Power Co., 438 U.S. at 83. In Duke Power Company, the Supreme Court found the Price-Anderson Act, which imposed a cap on liability for nuclear accidents, did not violate the equal protection component of the Fifth Amendment, under the appropriate rational relationship analysis, when it

treated victims of a nuclear accident differently than all other tort victims, since the cap encouraged private industry participation in the economical production of nuclear energy. See Duke Power Co., 438 U.S. at 82-84.

Similarly, 42 U.S.C § 1981(a)(b)(3)(A), which imposes a cap on certain compensatory and punitive damage awards, does not violate the Equal Protection Clause under a rational relationship analysis. The interest of Congress in promoting the economic viability of small business against the potentially devastating impact of large awards is a rational justification for treating the employees of small businesses differently. Moreover, Congress' decision to treat certain employment discrimination victims differently than tort victims is rational in light of its recognition that augmenting the amount of available damages would increase the volume of litigation affecting small businesses or other employers who play a key role in the economy.

Plaintiff contends that a heightened standard of scrutiny is warranted, based on decisions made by the New Hampshire Supreme Court in Carson v. Mauer, 120 N.H. 925, 424 A.2d 825 (1980) and Brannigan v. Usitalo, 134 N.H. 50, 587 A.2d 1232 (1991). However, these cases dealt with caps placed on damage claims by certain State laws which were found to violate the equal protection clause of the New Hampshire Constitution. See

Brannigan, 134 N.H. at 53, 587 A.2d at 1236 (applying standard under New Hampshire Constitution set forth in Carson); see also Carson, 120 N.H. at 932, 424 A.2d at 831 (State Constitution required stricter, middle tier level of scrutiny, even though federal constitution would require only rational basis analysis). Here, the question is whether a federal statute comports with the federal constitution. State precedent, applying a State rule of decision for enhanced scrutiny under a State constitution, is therefore irrelevant.

Equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. See F.C.C. v. Beach Communications. Inc., 508 U.S. 307, 313 (1993); see also Sullivan v. Stroop, 496 U.S. 478, 485 (1990). Because, in this case, there is a rational reason for Congress' action, "'our inquiry is at an end.'" F.C.C., 508 U.S. at 313-14 (citation omitted).

## Conclusion

Plaintiff's motion to amend the judgment (document no. 80) is denied.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date: January 27, 1999

-10-

cc:   Steven M. Latici, Esq.
      John F. Bisson, Esq.
      United States Attorney General
      United States Attorney