Rockingham
No. 90-405

STEPHEN COOK

v.

WICKSON TRUCKING CO., INC. & a.

December 11, 1991

*Devine, Millimet & Branch P.A.*, of Manchester (*Andrew D. Dunn* on the brief, and *Cynthia A. Satter* orally), for the plaintiff.

*Sulloway Hollis & Soden*, of Concord (*Tracy D. Hill* on the brief and orally), for the defendants.

THAYER, J. The plaintiff appeals from an order of the Superior Court (*Hampsey*, J.), entering summary judgment in favor of the defendants, plaintiff's employer and its workers' compensation carrier, thus denying the plaintiff's claim for workers' compensation benefits, RSA ch. 281-A (Supp. 1990). The sole issue on appeal is whether the trial court erred in ruling that, as a matter of law, the plaintiff's injuries did not arise out of and in the course of his employment. We find no error and affirm.

At the time of the accident, the plaintiff was employed part-time by defendant Wickson Trucking Company (Wickson) as a mechanic. On November 23, 1985, at approximately 8:00 p.m., the plaintiff punched out of work for the day. He was driving home in a service truck owned by his employer when he encountered two of his co-workers walking along the road. Each had run out of gas while driving his own car home after work.

The plaintiff picked them up and drove to his home, where he left the service truck, picked up a gas can, and took another vehicle, a Honda. He drove his co-workers to a gas station and, on the way

back to the stranded cars, made a U-turn and collided with another vehicle.

The plaintiff's claim for workers' compensation benefits for the injuries he sustained in the accident was denied by the New Hampshire Department of Labor. The plaintiff then appealed to the superior court. The defendants moved for summary judgment, and the plaintiff filed a counter-motion for summary judgment. Following a hearing, the court found that there were no genuine issues of material fact and that the defendants had established an entitlement to judgment as a matter of law. The court's order states:

> "[A]t the time of the accident, the Plaintiff was performing a personal activity, not related to his employment at Wickson Truck, and . . . the incidents which occurred were within the ordinary peril of travel between home and work. Therefore, the Court is unable to find that the cause of the injuries sustained by Cook can properly be considered a hazard of his employment at Wickson Trucking."

On appeal, the plaintiff argues that he received a "call to employment" when he encountered his stranded co-employees, because his activities in assisting them were integrally related to his employment relationship with Wickson. The defendants, on the other hand, argue that the trial court correctly ruled that the plaintiff's injuries resulted from the ordinary perils of travel between home and work and, as such, are not covered under workers' compensation law.

■ "'Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits filed, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Lourie v. Keene State College*, 121 N.H. 233, 235, 428 A.2d 902, 903 (1981) (quoting RSA 491:8-a (Supp. 1979)). The plaintiff does not dispute that there is no "genuine issue as to any material fact." This review is limited, therefore, to the trial court's application of the law to the facts as set forth above.

■ We turn now to the plaintiff's contention that the trial court erred in concluding that his injury was not the result of a hazard created by the plaintiff's employment. The New Hampshire workers' compensation statute requires that an accidental injury, to be compensable, must "aris[e] out of and in the course of employment." RSA 281-A:2, XI (Supp. 1990). "This requirement imposes on the claimant an obligation to prove that the injury is related to the

employment in terms of time, space, and subject matter." *Whittemore v. Sullivan Cty. Homemaker's Aid Serv.*, 129 N.H. 432, 434, 529 A.2d 919, 920 (1987). This court has established that the claimant must prove:

> "(1) that the injury arose out of employment by demonstrating that it resulted from a risk created by the employment, *Maheux v. Cove-Craft Co.*, 103 N.H. 71, 74, 164 A.2d 574, 576 (1960); and (2) that the injury arose in the course of employment by demonstrating that (A) it occurred within the boundaries of time and space created by the terms of employment, *Heinz v. Concord Union School Dist.*, 117 N.H. 214, 218, 371 A.2d 1161, 1164 (1977); and (B) it occurred in the performance of an activity related to employment, which may include a personal activity if reasonably expected and not forbidden, *see Hanchett v. Brezner Tanning Co.*, 107 N.H. 236, 238–39, 221 A.2d 246, 247 (1966); or an activity of mutual benefit to employer and employee, *see Hanchett v. Brezner Tanning Co., supra* at 239, 221 A.2d at 248."

*Murphy v. Town of Atkinson*, 128 N.H. 641, 645–46, 517 A.2d 1170, 1171–73 (1986) (citations omitted).

█ The plaintiff argues that merely because the accident occurred after work hours does not mean that his activity was personal and not related to his employment. While this court has questioned the utility of the strict "coming and going" rule, under which an employee having fixed hours and a fixed place of work is compensated only for injuries which occur on the employer's premises, *see Brousseau v. Blackstone Mills*, 100 N.H. 493, 495, 130 A.2d 543, 545 (1957), we have repeatedly recognized that the ordinary perils of travel between home and work are not considered hazards of employment and, therefore, that injuries arising from such travel are noncompensable. *See Donnelly v. Kearsarge Tel. Co.*, 121 N.H. 237, 240, 428 A.2d 888, 890 (1981); *Heinz, supra* at 218, 371 A.2d at 1164.

There are two exceptions to this rule. First, an employee may recover for injuries sustained while travelling to or from his place of employment if he is on a "special duty or errand" for the employer. *Heinz, supra* at 219, 371 A.2d at 1164; *see Henderson v. Sherwood Motor Hotel*, 105 N.H. 443, 445, 201 A.2d 891, 894 (1964). Second, personal activities are compensable if they are "reasonably to be expected" and "not forbidden," *Hanchett supra,* or if they confer a "mutual benefit [on] the employee and employer." *N.E. Telephone Co. v. Ames*, 124 N.H. 661, 664, 474 A.2d 571, 573 (1984).

■ The first exception is not available to the plaintiff in the case before us because he has not argued that he was on a special errand for his employer at the time of the accident. However, even if the plaintiff has raised the "special duty or errand" exception, as the dissent contends, the instant circumstances do not fall within that exception. A special employment errand normally arises "[w]hen any person in authority directs an employee to run some private errand or do some work outside his normal duties for the private benefit of the employer or supervisor . . . ." 1A ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 27.41, at 5-424 (1990). The record before us contains no evidence that either the plaintiff's employer or his supervisor directed him either to stop and render assistance to his fellow employees or to be prepared to do so. The dissent points out that before leaving from work the plaintiff knew of his co-workers' after-work excursion to the gas station. Although the plaintiff might have known of these plans, there is no evidence that the plaintiff was, in any way, a part of those plans. The dissent also notes that when the plaintiff stopped to aid his co-workers, he was driving the work vehicle that the co-workers had intended to retrieve for their own use. However, neither the plaintiff's mere operation of a company truck, nor the intention of co-workers, unknown to the plaintiff, is sufficient to bring the plaintiff's actions within the "special duty or errand" exception as described above.

■ Furthermore, the dissent broadly construes the special employment errand rule to include circumstances in which "the employee's impression of what is expected of him in serving the interests of his employer or superior, are in fact sufficient to motivate his undertaking the service in question." 1A LARSON, *supra* § 27.48, at 5-438-40. The dissenting justices argue that because the plaintiff encountered his *supervisor* on the road, the plaintiff was compelled to stop and render assistance, knowing "that his supervisor will judge his next day's performance on the job, and for the employee to fail to offer assistance is certainly not what would be reasonably expected of an employee." For this reason, the dissent concludes that the plaintiff's actions should fall within the "special errand or duty" exception. We disagree, because if these analyses were adopted, and the roles of the plaintiff and supervisor were reversed, all other circumstances remaining unchanged, the supervisor would not be entitled to workers' compensation benefits because he could not argue that he risked work-related repercussions for failing to stop and render assistance to an employee whom he supervised.

Similarly, if the plaintiff had encountered only his co-worker, and not his supervisor, he would not be entitled to workers' compensation benefits. If, however, the plaintiff had chanced to encounter his supervisor on a non-work day, the analysis urged by the dissent conceivably would lead to a finding of workers' compensation coverage. Workers' compensation coverage would turn on a worker's status on the totem pole of employment classification; workers in supervisory positions would be less likely to receive the benefit of workers' compensation coverage than other employees. We cannot agree that such a result is consistent with the workers' compensation statute.

■ The second exception to the "coming and going" rule is likewise unavailable to the plaintiff. The plaintiff cites *Maheux v. Cove-Craft* and *Hanchett v. Brezner* in support of his position that activities even of a personal nature may be a natural incident of employment. In both of the cited cases, however, the injured employees were engaged in activities on the employer's premises, utilizing the employer's equipment, with the employer's knowledge. *See Maheux v. Cove-Craft*, 103 N.H. at 74–75, 164 A.2d at 576–77 (employee injured during lunch time while operating employer's machine to make a checkerboard for his own use); *Hanchett v. Brezner Tanning Co.*, 107 N.H. at 237, 221 A.2d at 248 (mechanic killed during working hours while using his employer's jack to repair his own automobile). We decline to hold under these circumstances that the risk that the plaintiff might be injured while assisting his fellow employees after work was "incidental to, and inextricably interwoven into the fabric of his employment" as a part-time mechanic. *Id.* at 239, 221 A.2d at 247–48.

■ Further, the plaintiff suggests that aiding his co-workers provided a mutual benefit to both the employer and employees. In *N.E. Telephone Co. v. Ames, supra* at 664, 474 A.2d at 574, we held that collective bargaining negotiations constituted a mutual benefit to the employer and employee, so as to allow for workers' compensation coverage for an injury sustained by a union representative during such negotiations. In contrast, offering a ride to the gas station to a stranded co-employee encountered on the road after work is simply "too vague and attenuated a benefit to satisfy the *N.E. Telephone* rule." *Murphy v. Town of Atkinson*, 128 N.H. at 647, 517 A.2d at 1174.

■ The fact that one of the stranded co-employees was the plaintiff's immediate supervisor is not sufficient to characterize the plain-

tiff's actions as employment-related. All three employees were finished with work for the day and returning home. None of them was scheduled to return to work that night. *Cf. Heinz v. Concord Union School Dist.*, 117 N.H. at 219, 371 A.2d at 1164 (school teacher killed in accident while on his way home to change clothes and return to school to chaperone a dance); *Henderson v. Sherwood Motor Hotel*, 105 N.H. at 444, 201 A.2d at 894 (cocktail waitress killed on way home after working at special evening duty). The plaintiff was not required, by nature of his employment, to render assistance. The bare fact that the plaintiff knew through his employment the two individuals whom he assisted does not make this personal activity sufficiently related to the nature of employment to require the payment of workers' compensation.

The dissent relies on the testimony of Mr. Wickson, the company president, to conclude that the plaintiff's actions were "reasonably expected and not forbidden." Mr. Wickson purportedly testified, at a labor department hearing, that if one employee were stranded on the road, another would be authorized and expected to give assistance. However, reliance on this purported testimony is misplaced.

■ The moving party is charged with establishing a record sufficient to decide the questions of law raised on appeal. SUP. CT. R. 13(3); *see also* SUP. CT. R. 16(3)(d) (the moving party's brief shall set forth "a statement of facts material to the consideration of the questions presented, with appropriate references to the appendix or to the record"). The record before us does not contain a transcript of Mr. Wickson's testimony at the labor department hearing. *See Bussiere v. Cunningham, Warden*, 132 N.H. 747, 754, 571 A.2d 908, 912 (1990) (without a transcript the question of sufficiency of the evidence cannot be determined on appeal, and we presume that the evidence supports the lower court's finding); SUP. CT. R. 15(3) (in order to contend that a finding is unsupported by the evidence the moving party must include in the record a transcript of all relevant evidence). Thus, what the dissent relies on is the testimony of Mr. Wickson as paraphrased by the plaintiff. *Cf. State v. Sampson*, 132 N.H. 343, 347, 565 A.2d 1040, 1043 (1989) (in reviewing whether the trial court committed error, we are limited by the record presented and we refrain from basing our finding upon mere speculation). Because we do not have the transcript of his testimony, we do not know exactly what Mr. Wickson may have said, to what question he may have responded, or the context in which he may have made such a statement. Moreover, although the dissent states that the substance of

Mr. Wickson's statement was uncontested, the defendants' motion for summary judgment, also relying on testimony from the labor department hearing, notes that Mr. Wickson never encouraged, instructed, or required the plaintiff to render assistance to his co-workers, and was unaware of what took place until hours after the accident.

 The trial court did not err in ruling that the cause of the injuries sustained by the plaintiff could not properly be considered a hazard of his employment. Accordingly, we affirm the trial court's order granting the defendants' motion for summary judgment.

*Affirmed.*

JOHNSON and BATCHELDER, JJ., dissented; the others concurred.

JOHNSON, J., dissenting: I disagree with the majority's characterization of the circumstances surrounding Cook's accident, as well as its interpretation of the applicable law and its reading of Cook's argument. Therefore, I respectfully dissent.

I first note that the majority omits three crucial items in its recitation of the facts which were set forth in the plaintiff's brief and uncontested by the defendants: (1) Cook knew before he left work on the night of the accident that his co-worker Stanley's car was low on gas, and that their mutual supervisor, Bouchard, had decided to follow Stanley to a gas station after work, in case Stanley's car did not make it to the station; (2) Mr. Wickson himself testified at the department of labor hearing that he would expect that if one employee was stranded by virtue of having run out of gas, another one of his employees would be authorized—and even expected—to help him out; and (3) the trial court's order, on the cross-motions for summary judgment, stated that when Cook encountered Bouchard and Stanley on foot, both of their cars having run out of gas on the way to the station, the two were walking back to the worksite to get a gas can and the company service truck Cook was driving at the time.

It is important to remember here that it is this court's duty to construe liberally the workers' compensation statute, RSA 281-A:2, XI (Supp. 1990), in order to give the broadest reasonable effect to its remedial purpose, *see Whittemore v. Sullivan Cty. Homemaker's Aid Serv.*, 129 N.H. 432, 435, 529 A.2d 919, 920–21 (1987), and that all reasonable doubts must be resolved in favor of the injured worker, *see Ranger v. N.H. Youth Dev. Center*, 117 N.H. 648, 652, 377 A.2d 132, 135 (1977).

I would find that Cook's accident did "aris[e] out of" employment, *see* RSA 281-A:2, XI (Supp. 1990), a criterion "primarily concerned

with causal connection." *Whittemore, supra* at 435, 529 A.2d at 921. "With respect to perils of travel, . . . th[is] court has held that special travel risks imposed by special duties are properly considered hazards of the employment," and thus arise out of employment. R. GALWAY, NEW HAMPSHIRE WORKERS' COMPENSATION MANUAL § 24, at 19 (1990) (citing *Heinz v. Concord Union School Dist.*, 117 N.H. 214, 371 A.2d 1161 (1977); *Henderson v. Sherwood Motor Hotel*, 105 N.H. 443, 201 A.2d 891 (1964)).

Professor Larson cites with approval the trend in other States to adopt an "actual risk" test for determining whether an injury arose out of employment. Consistent with this trend, courts "do not care whether this risk was also common to the public, if in fact it was a risk of this employment." 1 A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 6.40, at 3–6 (1990) (hereinafter "LARSON"). He notes that "[o]ne effect [of adopting the 'actual risk' test] is to permit recoveries in most street-risk cases . . . ." *Id.*

Certainly there is a causal connection here between Cook's accident and his employment with the defendant; if Cook had not been a company employee, the chances are overwhelming that he never would have encountered Bouchard and Stanley on the road leading back to the worksite that evening and stopped to assist them. Moreover, as discussed in greater detail below, a "special travel risk" was imposed on Cook by virtue of his "special dut[y]" to assist his supervisor from his predicament. At the very least, Cook's accident was an "actual risk" of his employment, because it was *in fact* a risk which grew out of his employment. Thus, Cook's injuries arose out of employment as contemplated by our workers' compensation statute.

Turning now to the "in the course of employment" requirement, the majority correctly notes that recovery is permitted for an injury which occurred during performance of a personal activity "reasonably expected and not forbidden." *Murphy v. Town of Atkinson*, 128 N.H. 641, 646, 517 A.2d 1170, 1173 (1986); *see Hanchett v. Brezner Tanning Co.*, 107 N.H. 236, 238–39, 221 A.2d 246, 247 (1966). Wickson's testimony makes it clear that Cook's activity was "reasonably expected and not forbidden." The majority, however, fails to discuss this broad, compelling language, and instead, simply distinguishes two cases cited by Cook in his brief, *Maheux v. Cove-Craft Co.*, 103 N.H. 71, 164 A.2d 574 (1960) and *Hanchett supra*. When a part-time, teen-aged worker encounters his adult supervisor walking along the road in the direction of their worksite shortly after the supervisor has left work, in search of the company truck the worker is driving, it certainly is "reasonably expected" that the worker will give his su-

pervisor a lift and render whatever aid the supervisor seems to need. Not surprisingly, the company president testified at the labor department hearing that, if one employee were stranded on the road, another would be *authorized*, and even *expected*, to offer aid.

In addition to not fully considering the "reasonably expected and not forbidden" rule, the majority gives short shrift to the "special duty or errand" doctrine, *see Heinz*, 117 N.H. at 219, 371 A.2d at 1164; *Henderson*, 105 N.H. at 443, 201 A.2d at 894, which allows recovery for injuries sustained while travelling to or from a worksite where the worker is on a "special duty or errand" of the employer. Cook's brief asserts that "[e]mployment occurs when there is a call or requirement to perform some activity which is integrally related to the object of the employment relationship." The brief then argues in detail that "Cook's injuries occurred in just such a situation," and concludes that "Cook's assistance to his immediate supervisor under these circumstances was certainly 'integrally related' to—if not compelled by—his employment." In light of this language, I find unnecessarily and unjustifiably harsh the majority's position that Cook forfeited the "special duty or errand" issue because "he has not argued that he was on a special errand for his employer at the time of the accident." The "special duty or errand" doctrine simply states that when an off-duty worker is called to duty on the way to or from work, any injury suffered in performance of that duty is compensable. The basic issue this doctrine presents is fully argued in Cook's brief, and the absence of the magic words "special duty or errand" should not be a reason to fail to address this issue.

When a worker's trip is undertaken with both an employment errand and a personal errand in mind, Professor Larson states that "if the employment errand comes first, and the injury occurs before it is completed, the case for compensability is very plain." 1 LARSON § 19.26, at 4-364. Contrary to the majority's assertions, to be classified as an "employment errand," the errand need not be one normally associated with the person's work, as Professor Larson explains:

> "When any person in authority directs an employee to run some private errand or do some work outside his normal duties for the private benefit of the employer or superior, an injury in the course of that work is compensable. . . . [1A. LARSON § 27.47, at 5-424] The question of the actual authority of the person issuing the order is sometimes adverted to in the cases, but should not be decisive. . . . [*Id.* at § 27.46, at

5-437] [Moreover,] the employer's 'order' need not take the form of an outright command, if in the circumstances the employer's 'suggestion,' or even the employee's impression of what is expected of him in serving the interests of his employer or superior, are in fact sufficient to motivate his undertaking the service in question." [*Id.* at § 27.48, at 5-438-40.]

In light of this language, Cook's abortive attempt to help his supervisor and co-worker falls squarely within the "special errand or duty" rule. Cook was performing a private errand for his supervisor at the time of the accident; as such, the errand qualifies as a compensable employment errand. Again, my resolution of this issue flows from my view of the circumstances surrounding Cook's decision to render assistance. I think the majority ignores the realities of the workplace in assuming that this decision was unaffected by the supervisor-worker relationship, and belies the testimony of the parties. It strains credulity to argue seriously that Cook could have encountered his supervisor and co-employee, returning on foot to their mutual place of employment, knowing that they had left under the threat that the co-employee's car would run out of gas, and that he would continue merrily along without offering assistance. Every employee knows that his supervisor will judge his next day's performance on the job, and for the employee to fail to offer assistance is certainly not what would be reasonably expected of an employee.

I would reverse the decision of the trial court and order payment of compensation benefits.

BATCHELDER, J., joins in the dissent.