Hillsborough
No. 91-564

RONALD O. LECLAIR

v.

ERLYAN LECLAIR

May 14, 1993

*Douglas & Douglas*, of Concord (*Charles G. Douglas, III* on the brief, and *Caroline Douglas* orally), for the plaintiff.

*Mazerolle & Frasca, P.A.*, of Nashua (*Stephen J. Frasca* on the brief and orally), for the defendant.

BROCK, C.J. The plaintiff, Ronald O. LeClair, appeals from a decree, recommended by the Marital Master (*Martha W. Copithorne*, Esq.), and approved by the Superior Court (*Barry*, J.), ordering him to contribute to the costs of his adult son's college education. We affirm.

The parties were divorced in April 1978, and have one son, Jeremy, who was five years old at the time of the divorce. The court did not enter a child support order against either party at that time. Jeremy lived with his father until he was sixteen, then he moved in with his mother. Jeremy began his freshman year at Babson College in the fall of 1991. The master found that although the defendant made efforts to discuss Jeremy's college plans with her former husband, their communication was so poor that the parties did not discuss Jeremy's choice of college prior to his decision to attend Babson.

In February 1991, the defendant filed a petition requesting that the court order the plaintiff to make a reasonable contribution toward Jeremy's college expenses. The plaintiff filed an answer alleging, among other things, that he did not have sufficient assets or income to make a substantial contribution toward such college expenses.

The master found that the total cost for tuition, room and board at Babson for the 1991–92 academic year was $22,900.00. She found that the total parental contribution for that academic year, after deducting student loans, grants, work study, Jeremy's savings, and contributions from Jeremy's paternal grandmother, would be $8,056.00.

The master reviewed the financial status of both parties and found that although the plaintiff was not receiving a salary from his nursery business, he was receiving returns on loans previously made to the business, and had received income from the sale of business assets. The master determined that the plaintiff's financial situation

could improve substantially if he sold his real estate and nursery business pursuant to a then existing option agreement. The plaintiff was ordered to contribute $2,000.00 per academic year toward his son's education, for a total of four years, if he did not sell his real estate and business pursuant to the option agreement. If the option to purchase was exercised, each party's share of the remaining three years would be calculated by taking the total cost of attending the college, subtracting "the loans, grants, [Jeremy's] expected financial contribution as determined by the college financial aid office, and gifts or grants from grandparents," and dividing the total remaining by half. Because the real estate and business has been sold, each party is responsible for the contributions under the formula just described.

The master granted the plaintiff's request to exclude from evidence the purchase and sales agreement because of a nondisclosure clause as to the sales price. The master reviewed the purchase and sales agreement in chambers and ordered no further disclosure of the contract price. She did provide, however, that "[i]n the event either party appeals this decision, the contract shall be submitted to the [supreme court] as an exhibit to be sealed." The plaintiff did not submit a copy of the option agreement to this court; thus, we rely on the master's finding, *see* SUP. CT. R. 13(3); *Cook v. Wilson Trucking Co.*, 135 N.H. 150, 157, 600 A.2d 918, 922 (1991), that in the event that the property was sold "the Plaintiff [would] have sufficient assets to contribute equally with the [defendant] to his son's college education."

The plaintiff argues that, with the passage of RSA 458:35-c, the legislature intended to eliminate the superior court's jurisdiction to order a divorced parent to contribute toward post-majority college expenses. Alternatively, he argues that the superior court did not have subject matter jurisdiction to award post-majority college expenses in a case where there was never an underlying child support order. We disagree.

■■ The court's powers in custody, maintenance, and education of children in divorce and separation cases are conferred entirely by statute. *Whipp v. Whipp*, 54 N.H. 580, 582 (1874). RSA 458:17 provides the superior court with broad discretionary powers in relation to the support, maintenance, and custody of children of divorce:

"In all cases where there shall be a decree of divorce or nullity, the court shall make such further decree in relation to the support, education, and custody of the children as shall

be most conducive to their benefit and may order a reasonable provision for their support and education."

RSA 458:17, I (1992). This provision has been a part of New Hampshire statutory law for over a century. *See* GS 163:11 (1867); RL 339:15 (1942). Until 1987, the statute further provided that the court had the power to place money in trusteeship for the "maintenance and education of the *minor* children," but did not contain any specific provision for the education of children who reached the age of majority. *See* GS 163:13 (1867); RL 339:17 (1942); RSA 458:20 (Supp. 1987) (emphasis added); *Guggenheimer v. Guggenheimer*, 99 N.H. 399, 401–02, 112 A.2d 61, 63 (1955); *Whipp*, 54 N.H. at 581. In 1987, the legislature repealed and reenacted the trust fund statute, providing that:

"In a proceeding under this chapter, the court may set aside a portion of the property of the parties in a separate fund or trust for the support, maintenance, education and general welfare of either party or of any minor, dependent, or incompetent child of the parties. A separate fund or trust may also be established under this section for a child of the parties, *who is 18 years of age or older, if the child is in college*, and for an incompetent child of the parties who is 18 years of age or older."

RSA 458:20 (1992) (emphasis added); Laws 1987, ch. 278; *see* C. DOUGLAS & C. DOUGLAS, 3A NEW HAMPSHIRE PRACTICE, FAMILY LAW § 19.13, at 74 (1992).

■ Under RSA 458:20, the court may order a parent to contribute toward an adult child's educational expenses if the child is in college. The plain language of this statute, together with its legislative history, demonstrates that the legislature intended to codify decisions in which this court recognized the superior court's jurisdiction under RSA 458:17 to order divorced parents, consistent with their means, to contribute toward the educational expenses of their adult children. *See* Hearing on HB 36 Before the Senate Judiciary Committee (April 3, 1987).

In *French v. French*, 117 N.H. 696, 699, 378 A.2d 1127, 1128–29 (1977), we held that RSA 458:17 provides the court with jurisdiction to order divorced parents to pay for reasonable college expenses of their adult children.

"We note that in RSA 458:17 (Supp. 1975), providing for the custody, support and education of children, the word 'minor'

does not appear. Because as a matter of law jurisdiction to award custody is limited to jurisdiction over minors, there would seem to be no reason why 'minor' should be inserted in statutory language regarding such custody; but because jurisdiction to award education expenses is not limited as a matter of law to jurisdiction over minors, if the legislature had intended that there be such a limitation, it could easily have said so."

*Id.* Under the particular facts and circumstances of that case, we held that the superior court did not abuse its discretion in ordering the divorced father to contribute toward the current and future college expenses of his children. *Id.* at 701, 378 A.2d at 1130.

Following the path set by *French,* we consistently have granted the superior court broad discretion in its decision whether or not to order a divorced parent to contribute toward college expenses. *See Gnirk v. Gnirk,* 134 N.H. 199, 203–06, 589 A.2d 1008, 1011–13 (1991) (no abuse of discretion when superior court ordered divorced father to contribute toward adult child's college expenses, despite lack of educational support provision in original support order); *Kayle v. Kayle,* 132 N.H. 402, 404–05, 565 A.2d 1069, 1071–72 (1989) (court did not err, under circumstances of the case, in ordering divorced parent to pay reasonable college expenses of adult child); *Merrifield v. Merrifield,* 122 N.H. 372, 374–75, 445 A.2d 1087, 1088 (1982) (no abuse of discretion when court declined to order divorced parent to contribute toward college costs of adult child); *Azzi v. Azzi,* 118 N.H. 653, 657, 392 A.2d 148, 151 (1978) (within court's discretion to order parties to jointly contribute toward reasonable college expenses of their children). RSA 458:17 and RSA 458:20 do not mandate that the superior court order a divorced parent to contribute toward college expenses in all cases. Rather, the trial court has the discretion to decide whether or not to order a parent to pay such expenses. *See Gnirk,* 134 N.H. at 201–02, 589 A.2d at 1010.

The plaintiff argues that the legislature expressed its intent to eliminate the trial court's discretion to order a divorced parent to pay reasonable college expenses by enacting RSA 458:35-c in 1990. He contends that the legislature intended to have all support orders, including educational support orders, terminate when the child reaches age eighteen or terminates high school. We disagree. RSA 458:35-c provides:

"Unless the court . . . specifies differently, the amount of a child support obligation stated in the order for support shall

> remain as stated in the order until all dependent children for whom support is provided in the order shall terminate their high school education or reach the age of 18 years, whichever is later, or become married, or become a member of the armed services, at which time the child support obligation terminates without further legal action."

RSA 458:35-c (1992).

■ First, RSA 458:35-c was enacted in 1985, not in 1990. *See* Laws 1985, 344:3. This date differential is important because RSA 458:20 was enacted in 1987, and thus, clarifies the purportedly ambiguous language in RSA 458:35-c in relation to the support of children in high school. Second, RSA 458:17 and RSA 458:20 permit the court to make orders in relation to support and education, while RSA 458:35-c addresses only the issue of duration of child support, and does not place a time limit on a parent's obligation to pay for reasonable educational expenses. The legislative history indicates that the language providing for alternative dates for the termination of support was inserted not as a limitation on the court's jurisdiction to order divorced parents to contribute toward college expenses of their adult children, but rather as a means to continue child support where a child has reached age eighteen, but continues to be enrolled in high school. *See* Hearing on HB 735 and HB 734 Before the Senate Committee on Public Institutions and Health and Welfare (May 1, 1985); N.H.S. JOUR. 1183 (1985) (statement of Sen. McLane). RSA 458:35-c addresses the legislature's concern that certain noncustodial parents were unilaterally ending child support payments when their children, who were still in high school, reached age eighteen. *See* N.H.S. JOUR. 1183 (1985) (statement of Sen. McLane). Alternatively, the plaintiff relies on RSA 458:35-c to argue that the court does not have jurisdiction to originate a child support order after his son turned age eighteen and graduated from high school. Because the plain language of RSA 458:20 permits the court to exercise such jurisdiction, we find no merit in this argument.

■ Viewing the plain language and legislative history of RSA 458:17 and RSA 458:20 together with that of RSA 458:35-c, we conclude that the legislature did not intend to eliminate the superior court's jurisdiction to order divorced parents to pay reasonable college expenses of their adult children. We also conclude that the court has jurisdiction to order a divorced parent to contribute toward reasonable college expenses after his or her child reaches age eighteen.

■ ■ This court consistently has afforded the superior court broad "discretion in originating, modifying, or refusing to modify support orders to appropriately allocate responsibility for the post-secondary education expenses of adult children." *Gnirk*, 134 N.H. at 204, 589 A.2d at 1012. We will uphold the superior court's order unless "the evidence demonstrates clearly an abuse of such discretion." *Azzi*, 118 N.H. at 655, 392 A.2d at 149 (quotation omitted). The party challenging the court's order has the burden of showing that the order was "improper and unfair." *Hunneyman v. Hunneyman*, 118 N.H. 652, 653, 392 A.2d 147, 148 (1978) (quotation omitted).

■ The master stated that the plaintiff's realization from the sale of his business and real estate would enable him to pay the amount ordered for his son's educational expenses. Because the plaintiff did not submit a copy of the purchase and sales agreement for this court to review and there is no transcript in this case, we must defer to the master's findings and recommendations on this issue. *See* SUP. CT. R. 13(3); *Cook v. Wilson Trucking Co.*, 135 N.H. at 157, 600 A.2d at 922. A review of the limited record before us reveals no abuse of discretion.

The plaintiff next argues that to require a divorced parent to pay private college expenses for an adult child, when the court does not have the power to issue a similar order to a married parent, is a violation of equal protection under the State and Federal Constitutions. N.H. CONST. pt. I, art. 2; U.S. CONST. amend. XIV.

The defendant argues that the equal protection issue was not properly preserved for appeal. Despite appellate counsel's assurances during oral argument that the issue was raised in the plaintiff's motion for reconsideration, *see State v. Tselios*, 134 N.H. 405, 407, 593 A.2d 243, 245 (1991) (issue raised in motion for reconsideration preserved for appellate review), the only reference to equal protection in the record below is a handwritten addendum to the plaintiff's objection to the defendant's motion to post security. It is questionable whether this fleeting reference provided the trial court with a full opportunity to address this issue, *see id.*, and thus, the issue arguably is not preserved for appellate review. Nonetheless, we find some utility in addressing this equal protection issue "because similar claims may be raised in the future," *Appeal of Bosselait*, 130 N.H. 604, 608, 547 A.2d 682, 686 (1988), *cert. denied*, 488 U.S. 1011 (1989).

■ Because the Federal Constitution offers no greater protection than our State Constitution under its equal protection provi-

sions, *see Carson v. Maurer*, 120 N.H. 925, 932, 424 A.2d 825, 831 (1980), we rely on our State Constitution, *see State v. Ball*, 124 N.H. 226, 232, 471 A.2d 347, 351 (1983), and use federal case law "only as an aid to our analysis." *State v. Gravel*, 135 N.H. 172, 176, 601 A.2d 678, 680 (1991).

▪ "The first question in an equal protection analysis is whether the State action in question treats similarly situated persons differently." *Appeal of Marmac*, 130 N.H. 53, 58, 534 A.2d 710, 713 (1987). "If the persons are not similarly situated, . . . no equal protection problem is involved." *Locke v. Ladd*, 119 N.H. 136, 138, 399 A.2d 962, 963 (1979). For purposes of this case, we will assume, as did the parties, that, by virtue of their status as parents, married and divorced parents are similarly situated under the law for purposes of the issue before us. We, therefore, conduct an equal protection analysis to determine if the classification between married and divorced parents created by RSA 458:17 and RSA 458:20 is constitutionally permissible.

▪▪ In considering an equal protection challenge under our State Constitution, "we must first determine the appropriate standard of review: strict scrutiny; fair and substantial relationship; or rational basis." *Boehner v. State*, 122 N.H. 79, 83, 441 A.2d 1146, 1148 (1982). Equal protection under the law does not forbid classifications, *see* 2 B. SCHWARTZ, RIGHTS OF THE PERSON § 471, at 496–97 (1968), but requires us to examine the individual rights affected and the purpose and scope of the State-created classifications. *See Allgeyer v. Lincoln*, 125 N.H. 503, 508–09, 484 A.2d 1079, 1082-83 (1984).

▪ We apply the strict scrutiny test, in which the government must show a compelling State interest in order for its actions to be valid, when the classification involves a suspect class based on "race, creed, color, gender, national origin, or legitimacy," *State v. LaPorte*, 134 N.H. 73, 76, 587 A.2d 1237, 1239 (1991) (quotation omitted), or affects a fundamental right, *see Merrill v. City of Manchester*, 124 N.H. 8, 14–15, 466 A.2d 923, 927 (1983) (private real property ownership rights recognized as fundamental); *Provencal v. Provencal*, 122 N.H. 793, 797, 451 A.2d 374, 377 (1982) (decisions regarding custody and rearing of minor children involve fundamental rights).

▪ We apply the fair and substantial relation test to classifications involving "important substantive rights," including the right to tort recovery, *see Brannigan v. Usitalo*, 134 N.H. 50, 55, 587 A.2d 1232, 1236 (1991); *City of Dover v. Imperial Cas. & Indemn. Co.*, 133

N.H. 109, 116, 575 A.2d 1280, 1284 (1990), and the right to use and enjoy private real property subject to zoning regulations, *see Asselin v. Town of Conway*, 135 N.H. 576, 577, 607 A.2d 132, 133 (1992). Under this test, the classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation," *Carson v. Maurer*, 120 N.H. at 932, 424 A.2d at 831 (quotation and emphasis omitted).

 Finally, we apply the rational basis test to claims in which the classification does not involve a suspect class, a fundamental right, or an important substantive right under our State Constitution. Under the rational basis test, "'legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.'" *LaPorte*, 134 N.H. at 76, 587 A.2d at 1239 (quoting *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985)). Absent a showing that a suspect class, fundamental right, or substantive right is involved, "economic classifications are typically subject to the rational basis test." *Petition of State Employees' Assoc. & Goulette*, 129 N.H. 536, 540, 529 A.2d 968, 971 (1987) (unequal pay scale of State employees reviewed under rational basis test); *Couture v. Couture*, 124 N.H. 500, 502, 471 A.2d 1191, 1192 (1984) (classification between divorced parents with minor children and divorced adults without minor children in alimony scheme under RSA 458:19 considered under rational basis test); *Boehner v. State*, 122 N.H. at 83–84, 441 A.2d at 1149 (unequal tax burden on district court host communities considered under rational basis standard). Under the rational basis analysis, the party challenging the legislation has the burden "to prove that whatever classification is promulgated is arbitrary or without some reasonable justification." *Petition of State Employees' Assoc. & Goulette*, 129 N.H at 540, 529 A.2d at 971.

*Couture* is analogous to the case at bar. In *Couture*, the plaintiff father, who had custody of the couple's minor child, argued that RSA 458:19 violated his equal protection rights. Under that statute, the superior court may order alimony payments to be made "provided that in cases in which no children are involved, or in which the children have reached the age of majority, the order shall be effective for not more than 3 years or 3 years after the youngest child attains the age of majority, whichever occurs first." RSA 458:19. The father argued that because he had custody of the couple's minor child, the alimony award should have had a three-year duration. He claimed that equal protection entitled him to the same treatment afforded to divorced persons without minor children, and thus his alimony obli-

gation should be limited. Under a plain reading of the statute, we rejected his argument and held that because "no suspect classification, fundamental interest, or important substantive right is implicated by this application of RSA 458:19, the rational-basis test is the appropriate test for determining the merits of the challenge." *Couture*, 124 N.H. at 502, 471 A.2d at 1192. We upheld the constitutionality of the statute, observing that "a different approach is obviously warranted in dealing with the break-up of families which include minor children as distinguished from families in which there are no minor children." *Id.*, 471 A.2d at 1193.

 Here, the plaintiff raises primarily an economic issue. The classification between divorced and nondivorced parents, created in RSA 458:17 and RSA 458:20, involves no suspect classifications, and does not involve a fundamental or important substantive right under our State Constitution. Thus, we agree with his statement that this equal protection challenge centers "on whether the law is rationally related to a legitimate state interest."

The plaintiff has aptly stated that "[t]he objective of the court in extending its protection to children of divorced parents is to ensure that they are not unjustly deprived of opportunities they would otherwise have had, had their parents not divorced." RSA 458:17 and RSA 458:20 confer upon the court the authority to order a divorced parent to contribute toward the reasonable college expenses of his or her children. The legitimate State interest served by these statutes is to ensure that children of divorced families are not deprived of educational opportunities solely because their families are no longer intact.

The legislature's rationale for conferring upon the superior court the authority to order a divorced parent to contribute toward an adult child's college costs is not specified in the legislative history, *see* Laws 1987, ch. 278; N.H.S. JOUR. 963 (1987) (statement of Sen. Podles); however, its intent to codify our decisions that recognize the court's jurisdiction under such circumstances is apparent. *See* Hearing on HB 36 Before the Senate Judiciary Committee (April 3, 1987); N.H.S. JOUR. 963 (1987) (statement of Sen. Podles). We can assume, therefore, that the legislature recognized the increasing importance of post-secondary education for the citizens of this State. *See French*, 117 N.H. at 699, 378 A.2d 1128–29.

Despite our limited insight into the legislature's intent, we observe that heightened judicial involvement over the financial and personal lives of divorced families with children may be warranted, although similar involvement may not be necessary with intact families. The

legislature contemplated the need to have such heightened judicial control over divorced families because of unique problems that exist in a home that is split by divorce. *See In Re Marriage of Vrban*, 293 N.W.2d 198, 202 (Iowa 1980). Our statutory law provides the superior court with the power to oversee the financial arrangements of divorced families — to order alimony, divide property, and order support and educational costs — where it does not have similar power over intact families. *See generally* RSA ch. 458 (1992). While financial support of the family unit may be an unquestioned responsibility in an intact home, such support decisions often become regulated by court order in a disputed divorce. Because of these unique problems, we can assume that the legislature could rationally conclude that absent judicial involvement, children of divorce may be less likely than children of intact families to receive college financial support from both of their parents.

In summary, we find that the State has the dual legitimate interests of promoting higher education for its citizens, and of extending protections to children of divorce to ensure that they are not deprived of opportunities they otherwise would have received had their parents not divorced. RSA 458:17 and RSA 458:20 are rationally related to protecting these interests, and do so in a manner that is neither arbitrary nor without reasonable justification. *See Petition of State Employees' Assoc. & Goulette*, 129 N.H. at 540, 529 A.2d at 971. These statutes do not require the superior court to order college expenses in all cases. Rather, these statutes allow the superior court, in its sound discretion, to award reasonable college expenses of adult children under the proper circumstances. We, therefore, hold that RSA 458:17 and RSA 458:20 do not violate equal protection under our State Constitution.

The plaintiff further argues that the court erred by ordering him to pay for private college costs when public education was requested, available, and reasonable under the circumstances of the case. He urges us to create a presumption in favor of public higher education institutions. This, we will not do.

We also note that the plaintiff contends that he was not included in the decision-making process as to his son's choice of college. The record indicates, however, that the defendant attempted to contact the plaintiff regarding these issues, and that the plaintiff did not reply. The plaintiff cannot now complain about a situation for which he was responsible.

The crux of this case is whether the superior court abused its discretion under the circumstances of the case. *Gnirk*, 134 N.H. at 201–02, 589 A.2d at 1010. We have held that the superior court may order the divorced parents of a child "to provide a reasonable contribution toward the costs of post-secondary education if it is equitable in light of the circumstances of all of the parties." *Id.* at 204, 589 A.2d at 1012. There is no transcript in this case, and a review of the limited record before us reveals no abuse of discretion. Accordingly, we affirm the order below.

*Affirmed.*

All concurred.