Belknap
No. 2003-093

IN THE MATTER OF ROBERT JACOBSON AND KATHLEEN TIERNEY

Argued: October 15, 2003
Opinion Issued: February 2, 2004

514

*Gould and Burke, PLLC*, of Meredith (*Michael E. Gould* on the brief and orally), for the petitioner.

*Kathleen M. Tierney*, by brief, *pro se*, and *John Bryan*, orally, non-lawyer representative appearing by approval of the Supreme Court under Rule 33(2), for the respondent.

BROCK, C.J., retired, specially assigned under RSA 490:3. The petitioner, Robert Jacobson, appeals an order of the Superior Court (*Smukler*, J.) awarding child support to the respondent, Kathleen Tierney, for the support of the parties' disabled adult child. We reverse.

The relevant facts follow. During the early and mid-1980s, Robert Jacobson and Kathleen Tierney, although unmarried, had two daughters, Corrine and Danielle. At seventeen, Corrine, the elder daughter, suffered an episode of optic neuritis, which caused her to lose the vision in her left eye—a manifestation of multiple sclerosis (MS). In January 2001, three months after turning eighteen, she was diagnosed with MS.

Jacobson paid child support for Corrine until she graduated from high school in mid-2001. Later that year, the New Hampshire Department of Health and Human Services notified him that he was in arrears for child support payments owed to Tierney for Danielle. Following a hearing, the court ordered Jacobson to pay the arrearage and permitted Tierney to petition for reinstatement of child support for Corrine based upon a medical necessity.

In December 2002, when Corrine was twenty, the court awarded child support, finding, for the first time, that "Corrine is disabled by virtue of the MS and that she cannot live at this time as an emancipated adult." In support of its ruling, the court cited RSA 458:35-c (1992), explaining that "the statute by its terms recognizes that a parental obligation to support a child can extend beyond the time of the child's eighteenth birthday under certain circumstances. One of the circumstances explicitly recognized by

the statute is where the child is disabled." As a result, the court concluded that Jacobson "is obligated to provide his share of the support."

■ On appeal, Jacobson argues that the court misinterpreted RSA 458:35-c. Specifically, he argues that "[t]he language in the statute refers to a minor dependent child *who is disabled when support is sought*, not a twenty year old adult." (Emphasis added.) Tierney, however, contends that the statute "should not be construed as a limitation on the court's jurisdiction to order child support for an adult child who has a disability."

We review child support orders under our unsustainable exercise of discretion standard. *In the Matter of Breault & Breault*, 149 N.H. 359, 361 (2003). Accordingly, the party challenging the court's order has the burden of showing that the order was improper and unfair. *LeClair v. LeClair*, 137 N.H. 213, 221 (1993).

This court is the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. *Breault*, 149 N.H. at 361. We first examine the language of the statute, and, where possible, we ascribe the plain and ordinary meanings to the words used. *Id*. When the language of a statute is plain and unambiguous, we need not look beyond it for further indication of legislative intent, and we refuse to consider what the legislature might have said or add language that the legislature did not see fit to incorporate into the statute. *Id*. Furthermore, we interpret statutes in the context of the overall statutory scheme, not in isolation. *Id*.

The pertinent statute in this case, RSA 458:35-c, provides, in relevant part:

> Unless the court or other body empowered by law to issue and modify support orders specifies differently, the amount of a child support obligation stated in the order for support shall remain as stated in the order until all dependent children for whom support is provided . . . shall terminate their high school education or reach the age of 18 years, whichever is later, or become married, or become a member of the armed services, at which time the child support obligation terminates without further legal action. . . . *If the order involves a disabled child, the court shall specify the duration of the order, which may be beyond the time when the child reaches the age of 18*.

(Emphasis added.) We find this statute to be unambiguous, and, consequently, we need not look beyond its text to discern the legislature's intent. *See Breault*, 149 N.H. at 361.

■ Consistent with its plain meaning, we find that the final sentence of RSA 458:35-c presupposes an existing child support order for a disabled

child. Specifically, because the statute permits the court to extend the duration of support "beyond the time when the child reaches the age of 18," only a support order already in effect may be extended beyond eighteen, and that order must contemplate a child who is disabled at or before eighteen. *See* RSA 458:35-c; *see also Matter of Marriage of Burrell*, 747 S.W.2d 479, 483 (Tex. App. 1988) (interpreting Texas statute to mean that "support payments could not 'be continued' after and 'extended' beyond the child's 18th birthday unless the child was qualified for the support payments before the child became 18" where remainder of statute requires request for modification to occur before child's eighteenth birthday).

The statutory scheme governing child support reaffirms our construction. RSA 458:35-c—entitled "Duration of Child Support"—provides "alternative dates for the termination of [child] support." *LeClair*, 137 N.H. at 220. The statute, however, explicitly creates an exception for disabled children, requiring the court to specify the termination date of their support, which may continue "beyond . . . the age of 18." RSA 458:35-c. The necessary and obvious precursor to specifying that termination date is an existing support order for a disabled child. Nothing in the statute transforms the court's authority to specify the termination date for child support beyond age eighteen for disabled children into the discretion to award child support anew to adult children who become disabled after eighteen.

 In accordance with the plain meaning of the statute, Jacobson cannot be ordered to make child support payments to Tierney on behalf of Corrine. First, no support order was in effect at the time Tierney sought support for Corrine based upon her disability. "[C]hild support terminates as a matter of law upon the occurrence of the statutorily-specified events unless the court specifies differently." *Breault*, 149 N.H. at 361 (quotation, brackets and ellipsis omitted). On the record before us, there is no suggestion that the court specified differently. Thus, Jacobson's original support obligation for Corrine terminated by operation of law when she graduated from high school, *see id.*, and that obligation could not be reinstated when she was twenty. *See In the Matter of Gilmore & Gilmore*, 148 N.H. 111, 113-14 (2002) (holding that because child support had terminated, father could not be ordered to pay expenses that exceeded the scope of education expenses). Second, since Corrine was found to be disabled at twenty, her disability arose too late to qualify for an extension of child support permitted by the statute. *See* RSA 458:35-c. Rather, she is a disabled adult upon whose behalf a child support obligation cannot now

be imposed. Consequently, the court engaged in an unsustainable exercise of discretion in ordering Jacobson to pay child support for Corrine.

While we have recognized that courts may order divorced parents to contribute to the college expenses of their adult children, *LeClair*, 137 N.H. at 220, and have recently required a divorced parent to continue paying child support while his children attended college, *Breault*, 149 N.H. at 362, we note that these cases and their progeny are not dispositive here. They neither address nor rely upon the portion of RSA 458:35-c at issue in the instant case; namely, the last sentence governing the duration of child support for disabled children. *See LeClair*, 137 N.H. at 220 ("Viewing the plain language and legislative history of RSA 458:17 and RSA 458:20 together with that of RSA 458:35-c, we conclude that the legislature did not intend to eliminate the superior court's jurisdiction to order divorced parents to pay reasonable college expenses for their adult children."); *see also Breault*, 149 N.H. at 361-62 (holding that nothing in the plain language of RSA 458:35-c prohibits a trial court from issuing an original or modified support order that terminates when a child graduates from college, nor does RSA 458:17 mandate that child support terminate when a child reaches the age of majority).

■ Furthermore, by way of clarification, although in *LeClair* we disagreed with the plaintiff's claim that "the court does not have jurisdiction to originate a child support order after his son turned age eighteen and graduated from high school," *LeClair*, 137 N.H. at 220, we conflated "child support" with "education expenses"—terms which, subsequent to *LeClair*, we have distinguished and made clear are not synonymous. *See Gilmore*, 148 N.H. at 114. *LeClair*, properly understood, addresses only education expenses, and as we have repeatedly recognized, it stands for the proposition that the court may order divorced parents to contribute toward the educational expenses of their adult children. *See, e.g., id.* at 113.

Finally, although RSA 458:35-c does not permit the court to impose a child support obligation upon Jacobson for the benefit of his daughter, we note that Corrine—as a disabled adult child—may not be without recourse. Although we do not decide the issue, she may have a cause of action against Jacobson pursuant to RSA chapter 546-A (1997). *Cf. Smith v. Cote*, 128 N.H. 231, 245 (1986) (citing, among other things, RSA 546-A:2, in support of the claim that "[i]n New Hampshire . . . parents are required to support their disabled adult offspring"). This statute "is used mainly to secure support for adult children," 3 C. DOUGLAS, NEW HAMPSHIRE PRACTICE, FAMILY LAW §16.23, at 625 (3d ed. 2002), and it may more

appropriately address her needs. *Cf. Mora v. Mora,* No. W1999-02483-COA-R3-CV, 2001 WL 609567 at *5 (Tenn. Ct. App. 2001) (holding that Tennessee's conservatorship statutes provided appropriate avenue for addressing needs of parties' disabled adult daughter in contrast to child support statutes).

Having reviewed the briefs and oral arguments of the parties, we conclude that Jacobson's remaining arguments warrant no further discussion. *See Vogel v. Vogel,* 137 N.H. 321, 322 (1993). Accordingly, we reverse.

*Reversed.*

BRODERICK, C.J., and DALIANIS, J., concurred; NADEAU, J., with whom DUGGAN, J., joined, dissented.

NADEAU, J., with whom DUGGAN, J., joins, dissenting. The majority concludes that the phrase, "[u]nless the court or other body empowered by law to issue and modify support orders specifies differently," RSA 458:35-c (1992), does not empower the trial court, acting upon a petition for modification, to award child support to adult children who become disabled after they reach the age of eighteen. In reaching this conclusion, the majority departs from our precedent interpreting child support provisions. We have upheld similar orders requiring non-custodial parents to contribute toward educational expenses for adult children. *See LeClair v. LeClair,* 137 N.H. 213, 220 (1993). In fact, in *LeClair,* we explicitly rejected the plaintiff's argument that the superior court lacks "subject matter jurisdiction to award post-majority college expenses in a case where there was never an underlying child support order." *Id.* at 217. In doing so, we noted the broad discretionary powers of the superior court in relation to the support, maintenance, and custody of children of divorce. *See id.*

More recently, in *In the Matter of Breault & Breault,* 149 N.H. 359 (2003), we interpreted RSA 458:35-c in combination with RSA 458:17, I, and held that the superior court has the discretion to require non-custodial parents to continue paying child support while the children were attending college. *See id.* at 362. Significantly, we noted that "a trial court has the discretion to issue an *original or modified* child support order that terminates when the child graduates from college." *Id.* at 361 (emphasis added). In light of these holdings and for public policy reasons, we disagree with the distinction the majority has drawn between the discretion to order support payments for adult children in college and adult children who become disabled.

The majority also cites *Matter of Marriage of Burrell*, 747 S.W.2d 479, 483 (Tex. App. 1988), for the proposition that only an existing support order may be extended beyond age eighteen. This case, however, is readily distinguishable. First, the divorce action in *Matter of Marriage of Burrell* was not filed until the couple's mentally retarded daughter was almost twenty-eight years old, at which time, the non-custodial parent requested support. In fact, the court held that divorce courts in Texas lack jurisdiction "to order support payments for a mentally or physically disabled person who is over 18 years of age *when the divorce action is filed." Id.* at 484 (emphasis added). Here, Tierney and Jacobson were never actually married and there is no dispute that the original support order arose before Corrine turned eighteen. Second, the statute upon which the court in *Matter of Marriage of Burrell* relied, explicitly required that the original support order must be filed before the child's eighteenth birthday. *See id.* at 480; Tex. Fam. Code Ann. § 14.05(b) (Vernon 1986). RSA 458:35-c contains no such limiting language.

We are aware that interpreting RSA 458:35-c to permit support for an adult disabled child could lead to the assertion that an elderly parent should be required to pay support for a child who becomes disabled well beyond emancipation. This court, however, decides actual cases, not hypothetical ones. *See Sininger v. Sininger*, 479 A.2d 1354, 1360 (Md. 1984). "We could easily imagine a hypothetical that would have absurd results under an emancipation rationale . . . . We prefer to await an actual case and decide it, and distinguish it if appropriate, at that time." *Id.*

Moreover, we have consistently reserved matters concerning support orders to the sound discretion of the trial court. *See Breaull*, 149 N.H. at 362; *LeClair*, 137 N.H. at 220. Here, the trial court found that Corrine, now age twenty, began to manifest MS symptoms at age seventeen, had at least two exacerbations since that time, and that her disabling symptoms will likely increase over the years. Based upon these findings, the court concluded that "Corrine is disabled by virtue of the MS and . . . she cannot live at this time as an emancipated adult." Based upon its conclusion that Corrine is not emancipated at this time, the court exercised its sound discretion to order Jacobson to pay support. Finally, as required by RSA 458:35-c, the trial court specified the duration of the order and limited its duration to three years, after which time, either party may seek review.

We see no reason to limit the trial court's discretion under the facts of this case. In determining whether to order child support, the court should "take into consideration the progress of society, and the attendant requirements upon the citizens of today." *French v. French*, 117 N.H. 696, 700 (1977) (quotations omitted). Thus, the trial court may require the

parties to contribute to the costs of post-secondary education and/or may order the non-custodial parent to pay child support to the custodial parent, "if doing so is equitable in light of the circumstances of all of the parties." *Breault*, 149 N.H. at 363 (quotation omitted). We find this standard equally compelling to guide the trial court in its determination whether to order support for a disabled child after she reaches the age of eighteen.

In concluding that Jacobson should be required to support Corrine, we would align ourselves with other jurisdictions that conclude child support may be granted for the care of a disabled adult child. *See Levy v. Levy*, 53 Cal. Rptr. 790, 803 (Ct. App. 1966) ("Where an adult child is incapable of self support the duty [of a parent to provide support] may continue or *arise*." (Emphasis added.)); *Sininger*, 479 A.2d at 1361 ("[W]e hold that . . . the parental duty to support an adult incapacitated child existed in this case regardless of the child's emancipation."); *Lieberman v. Lieberman*, 517 S.W.2d 478, 480 (Mo. Ct. App. 1974); *Casdorph v. Casdorph*, 460 S.E.2d 736, 742 (W. Va. 1995); *Kinder v. Schlaegel*, 404 S.E.2d 545, 547 (W. Va. 1991).

Here, Jacobson, the challenging party, has failed to meet his burden to show that the child support order was improper and unfair. *See LeClair*, 137 N.H. at 221. Thus, for the reasons stated herein, we believe the trial judge's interpretation of RSA 458:35-c ordering Jacobson to continue to pay support to his adult disabled child was a sustainable exercise of discretion. *See Breault*, 149 N.H. at 361.

Respectfully, therefore, we dissent.