Judith DOBRICH, Plaintiff,

v.

GENERAL DYNAMICS CORP.,
ELECTRIC BOAT DIVISION,
Defendant.

No. 3:96 CV 1672(GLG).

United States District Court,
D. Connecticut.

July 19, 2000.

Robert B. Muchinsky, Hartford, CT, for Plaintiff.

Rodger W. Lehr, Jr., Douglas McClain Peachey, General Dynamics/Electric Boat Division, Groton, CT, David L. Metzger, Metzger & Richters, Hartford, CT, Neal J. McNamara, Holland & Knight, Providence, RI, for Defendant.

## OPINION

GOETTEL, District Judge.

Following a jury trial at which the jury awarded the Plaintiff $750,000 ($650,000 compensatory damages and $100,000 punitive damages), the Defendant has filed the following motions:

(1) for judgment as a matter of law or alternatively a new trial,

(2) for a remittitur, or

(3) alternatively, for a reduction in the damage award to the statutory cap.

Plaintiff has cross-moved for an award of prejudgment interest on her compensatory damage award.

This is an employment discrimination action brought by the Plaintiff, Judith Dobrich, against her former employer, the Electric Boat Division of General Dynamics Corporation, in which she claimed that she was discriminated against on the basis of her gender, age, and disability, and retaliated against and discharged because of her objection to these practices. She asserted claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), as well as pendent state claims for intentional infliction of emotional distress and negligent supervision. On a motion for summary judgment, the Court dismissed Counts Two through Seven, leaving only Count One, Plaintiff's claim under Title VII for sexual harassment by her co-workers, in which she sought both compensatory and punitive damages. *See Dobrich v. General Dynamics Corp., Electric Boat Div.*, 40 F.Supp.2d 90 (D.Conn.1999).

## FACTS

Plaintiff was hired by Electric Boat on June 9, 1994, as a laborer at the Windsor Site Office. She was fifty years old at the time of hire. Electric Boat is the division of General Dynamics that designs and builds nuclear submarines for the United States Navy. The Windsor Site Office, where the Plaintiff worked, was designed about forty-five years ago to house a prototype nuclear reactor for a particular class of submarines. The site was operated until approximately 1991, when it was closed. In 1993, Knolls Atomic Power Laboratory, which had been operating the facility, contracted with Electric Boat to stabilize the plant and, then in 1995, to completely deactivate and dismantle the reactor and demolish all structures on the site. Because this was a demolition project, the structures and activities on the Windsor Site continually decreased and, accordingly, the type of work being done on the job site and the types of craftsmen needed for this work also changed. At the beginning of the project, there were sixteen buildings. By January 1996, when the Plaintiff was laid off, only three of them remained.

In 1993, when Electric Boat accepted the contract for the Windsor Site project, it executed an industry-wide craft labor agreement, the General Presidents' Project Maintenance Agreement ("GPPMA"), which governed all union-represented employees on the job site regardless of their trade union affiliation. Under the GPPMA, Electric Boat was required to hire from the local union hiring halls and to designate a working leader (foreman) for each local union.

In June 1994, the Plaintiff was hired out of the local laborers' hiring hall along with three other individuals to move furniture from the buildings being demolished at Windsor Site. This work proved too physically demanding for her, and she was reassigned to lighter duty work including jani-

torial work and "High Rad Watch" work, monitoring access to high radiation areas, for which there was a significant need at the beginning of the Plaintiff's employment. For two and one-half months in 1995, Plaintiff was away from work because of sick leave. By late 1995 the project had run over budget and in January 1996, with only three buildings remaining, Electric Boat decided to lay off eleven craft workers, including seven laborers. Plaintiff was one of the individuals chosen for lay-off.

The two other laborers who performed primarily janitorial work were also chosen for lay-off, and, after January 1996, no laborer was assigned primarily to do cleaning work. (The union collective bargaining agreement, the GPPMA, did not require lay-offs to be based upon seniority.)

On May 12, 1995, Plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CCHRO"), alleging that she had been discriminated against on the basis of her age, gender, and disability. On June 16, 1995, Plaintiff filed a supplement with the CCHRO, adding a number of additional incidents, and on January 30, 1996, she filed a second supplementary complaint. All told, Plaintiff has listed a score of complaints in support of her hostile environment claim. Most of these are recited in the Court's earlier opinion referred to above and are set forth at some length in the papers of both parties submitted on these motions. They will not, therefore, be described again in individual detail.

## *LAW*

■ In order to prevail on a hostile environment claim under Title VII, a plaintiff who is harassed by a co-worker must establish two elements: (1) a hostile work environment; and (2) that a specific basis exists for imputing the conduct that created the hostile work environment to the employer. *See, e.g., Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir.1998); *Schwapp v. Town of Avon*, 118 F.3d 106,

110 (2d Cir.1997). An employer who has notice of a hostile work environment has a duty to take reasonable steps to eliminate it. *Distasio*, 157 F.3d at 62.

■ To establish the first element— the existence of a hostile work environment—Plaintiff must prove that the workplace was permeated with "discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal citations and quotation marks omitted); *see also Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). The hostile environment must be one that a reasonable person would find hostile or abusive, and that the victim did, in fact, perceive to be so. *Harris*, 510 U.S. at 21–22, 114 S.Ct. 367. The Supreme Court in *Harris* held that the courts should look to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interfered with the employee's work performance. *Id.* at 23, 114 S.Ct. 367. The incidents "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 n. 1, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (internal citation and quotation marks omitted). "[O]ne of the critical inquiries in a hostile environment claim must be the environment. Evidence of a general work atmosphere . . .—as well as evidence of specific hostility directed toward the plaintiff—is an important factor in evaluating the claim." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir.1997) (quoting *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415 (10th Cir.1987)) (internal quotations and emphasis omitted). The Supreme Court has repeatedly emphasized that simple teasing, offhand

comments, and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment. *See, e.g., Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Thus, to prevail on a hostile work environment claim, the Plaintiff must show that the workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of her employment. *Gallagher v. Delaney,* 139 F.3d 338, 347 (2d Cir.1998); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1305 (2d Cir.1995).

Second, the Plaintiff must show that a specific basis exists for imputing the conduct that created the hostile environment to the employer. *Perry v. Ethan Allen,* 115 F.3d at 149; *Murray v. New York Univ. College of Dentistry,* 57 F.3d 243, 249 (2d Cir.1995). That is a critical issue in this case.

### *JUDGMENT AS A MATTER OF LAW*

#### *Legal Standard*

 Defendant has filed a timely motion for judgment as a matter of law pursuant to Rule 50(b)(1), Fed.R.Civ.P. On such a motion "the district court is required to deny the motion unless, viewed in the light most favorable to the nonmoving party, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." *Binder v. Long Island Lighting Co.,* 57 F.3d 193, 198–99 (2d Cir.1995) (internal quotations and citations omitted). The Second Circuit has also held that a motion for judgment as a matter of law may be granted only when:

(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or

(2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it].

*Eagleston v. Guido,* 41 F.3d 865, 875 (2d Cir.1994) (citation omitted), *cert. denied,* 516 U.S. 808, 116 S.Ct. 53, 133 L.Ed.2d 18 (1995).

 The Second Circuit in *Galdieri–Ambrosini v. National Realty & Development Corp.,* 136 F.3d 276, 289 (2d Cir. 1998), also stated:

Judgment as a matter of law may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in her favor. *See, e.g., Sir Speedy, Inc. v. L & P Graphics, Inc.,* 957 F.2d 1033, 1039 (2d Cir.1992); *Vasbinder v. Ambach,* 926 F.2d 1333, 1339 (2d Cir.1991). In deciding such a motion, the court must give deference to all credibility determinations and reasonable inferences of the jury, *id.,* and it may not itself weigh the credibility of witnesses or consider the weight of the evidence, *id.* at 1340.

In moving for a judgment as a matter of law, the Defendant maintains that the score of incidents that are the basis of Plaintiff's claim either:

(1) did not constitute harassment based on gender, or

(2) were not reported to Defendant's management, or

(3) if reported, the company intervened and took prompt remedial action.

These three claims will be considered separately.

#### 1. *Was the harassment gender-based?*

 The evidence was clear that the language and attitudes of the laborers and other craft workers on site were crude and vulgar. This situation existed prior to the

Plaintiff's being hired and, apparently, continued until the facility closed.

Plaintiff was in the position of other women who become the first female in what was previously a rough, all-male work environment. *See Wolak v. Spucci,* 217 F.3d 157 (2d Cir.2000). While it is true that much of what the Plaintiff objected to was not directed at her *per se,* but was merely a continuation of coarse conduct which had been customary prior to there being any female laborers on the site, nevertheless, many courts have found the failure of the employer to change the ambience to one that is more acceptable to a female employee makes the employer responsible. *See, e.g., Robinson v. Jacksonville Shipyards, Inc.,* 760 F.Supp. 1486 (M.D.Fla.1991); *Jenson v. Eveleth Taconite Co.,* 824 F.Supp. 847 (D.Minn.1993); *see also Schwapp v. Town of Avon,* 118 F.3d at 108 (racial harassment claim by first black police officer on an all-white force).

Even though Plaintiff is herself no shrinking violet and occasionally used foul language on the job, that does not undercut her legal protections against unwelcome sexual harassment in the workplace. *See Burns v. McGregor Electronic Indus., Inc.,* 989 F.2d 959, 962–63 (8th Cir.1993) (holding that plaintiff's use of foul language or sexual innuendo in a consensual setting did not waive her protections from unwelcome harassment in the workplace); *Swentek v. USAIR, Inc.,* 830 F.2d 552, 557 (4th Cir.1987). Employees are entitled to a workplace free from "discriminatory intimidation, ridicule, and insult" motivated by the their membership in a protected class. *Harris,* 510 U.S. at 21–22, 114 S.Ct. 367.

Defendant alleges that "Plaintiff has put forth absolutely no evidence from which a reasonable jury could have inferred that she was subject to harassment because of her gender." (Def.'s Mem. at 28). Defendant then lists eight or more alleged incidents of harassment that were testified to

at trial, including the "broken chair incident (July 1994)," the "kicked chair incident (August 24, 1994)," the "dummy with erection," the "posters with male genitalia," the "vagina on the tablecloth," the "materials on lunchroom table/lunchroom partition/breast cup," the "urinating incidents," (Def.'s Mem. at 28–30), and proceeds to argue that either the incidents in question had "no gender component" or that there was no evidence that women found them more offensive than men. *Id.*

It is true that there are "equal opportunity harassers" whose behavior is offensive to both sexes. *See Holman v. Indiana Dep't of Transp.,* 211 F.3d 399 (7th Cir. 2000) (harassment of male and female employee by male supervisor). However, in this instance, the language and activities of numerous co-workers were involved, and no males seem to have objected to them.

Throughout the Plaintiff's opposition papers, she argues that the jury could "infer" that the words or actions were gender-related. We find some of these inferences to be remote. However, all instances of harassment need not contain explicit sexual references or be sexual in nature to be part of a course of conduct that is actionable under Title VII. If the offensive speech or conduct is directed at the plaintiff because of her gender, then it is relevant to plaintiff's harassment claim. Additionally, there were several gross drawings of sexual organs which clearly had a gender content. Plaintiff also notes that the company's discrimination policies provide that repetitious use of profanity can constitute a hostile and intimidating work environment, as can blocking an individual's path.

The Court instructed the jury that, in determining whether a work environment was hostile or abusive, it should consider the totality of the circumstances and not single events in isolation. "All instances of harassment need not be stamped with signs of overt discrimination to be relevant under Title VII if they are part of a course

of conduct which is tied to evidence of discriminatory animus." *Carter v. Chrysler Corp.*, 173 F.3d 693, 700 (8th Cir.1999). "A work environment must be looked at as a whole in addition to the individual comments or acts. A work environment is shaped by the accumulation of abusive conduct, and the resulting harm cannot be measured by carving it into a series of discrete incidents." *Id.* at 701. "There is neither a threshold magic number of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim." *Howley v. Town of Stratford,* 217 F.3d 141, 154 (2d Cir.2000) (quoting *Richardson v. New York State Dep't of Correctional Serv.,* 180 F.3d 426, 439 (2d Cir.1999)) (internal quotation marks omitted). In brief, while not all of the incidents of which the Plaintiff complained were gender-related, enough of them were that the jury was entitled to find that plaintiff experienced a hostile work environment motivated by her gender.

### 2. Notice to the Employer

■ Defendant argues that Plaintiff cannot rely on incidents of discrimination that were not reported to Defendant, at the time they occurred, through the complaint process Defendant had in place. Defendant urges us to hold that, by not complaining, Plaintiff waived any claim that these events contributed to the allegedly hostile environment. This argument, however, is not in keeping with the Second Circuit's articulated standard for employer liability, *i.e.,* that the employer failed to provide an adequate avenue for complaints *or* that the employer knew of the harassment, or in the exercise of reasonable care should have known, yet failed to take appropriate remedial action. *Howley,* 217 F.3d at 154; *Richardson,* 180 F.3d at 441; *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 767 (2d Cir.1998); 29 C.F.R. § 1604.11(d) (1999) (employer is liable for co-worker harassment if "the employer (or its agents or supervisory employees)

knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action"). The Second Circuit has held that knowledge of the harassment may include constructive notice (*i.e.,* that management should have known). *Distasio,* 157 F.3d at 63–64; *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 715 (2d Cir.1996). Moreover, "an employer is not necessarily insulated from Title VII liability simply because a plaintiff does not invoke her employer's internal grievance procedure if the failure to report is attributable to the conduct of the employer or its agent." *Distasio,* 157 F.3d at 64 (citing *Meritor,* 477 U.S. at 72, 106 S.Ct. 2399).

■ As noted above, Plaintiff testified that some of the incidents were reported and nothing was done or, more commonly, that the response was, in her view, inadequate; other incidents that were not reported took place in common areas and arguably should have been observed by management without Plaintiff's having to report them.

Plaintiff attempts to excuse her failure to report certain complaints to management by saying that she included them in her several CCHRO complaints. We do not see such later notification as creating a responsibility on the part of the employer for not acting promptly. However, in their totality, they may be considered along with items as to which management was timely notified, from the standpoint of whether there was effective remedial action taken by the employer. (*See* Discussion in Section 3, *infra* ).

There is the additional fact that some of the matters complained of were so open and obvious (*e.g.,* obscene drawings on safety notices) that supervisory personnel would have to have known of them. Defendant does not dispute that it may be charged with harassment of which it had constructive knowledge. Rather, it responds that the events never occurred because they were never seen by supervisory

personnel. Plaintiff said she took the posters down and gave them to her attorney. That created a sharp credibility issue. The Second Circuit instructed in *Distasio*, 157 F.3d at 66,

> In sum, whether or not knowledge of the unreported incidents of sexual harassment can be imputed to [the employer] is ultimately a jury question. Just as the evidence of the unreported incidents of harassment must be considered by the jury on the issue of a hostile work environment, the circumstances surrounding the failure to report those incidents must also go to the jury on the question of whether liability for them can be imputed to [the employer].

The jury apparently accepted the Plaintiff's version, and on a credibility issue, we cannot overrule the jury. In any event, Defendant was put on notice of a sufficient number of complaints that the fact that some were not reported is not determinative. There was sufficient notice to management that the Defendant could be held responsible for some of the incidents in question.

### 3. Was Prompt, Effective Action Taken?

▪ The law is clear that an employer may only be held liable for co-worker harassment if it failed to provide a reasonable avenue of complaint *or* if it knew (or should have known) of the harassment and failed to take reasonable steps to eliminate the harassment. *Faragher*, 524 U.S. at 799, 118 S.Ct. 2275 (noting general agreement among circuits that negligence standard governs employer liability for co-worker harassment); *Richardson*, 180 F.3d at 440; *Distasio*, 157 F.3d at 65. Defendant argues that it had a reasonable procedure for dealing with complaints and that it addressed those complaints that were reported to it.

The evidence indicated that most of the items addressed were corrected promptly. However, Plaintiff's complaint is that the succession of harassing acts continued albeit in different fashions. Plaintiff contends that the company should have taken more drastic steps in dealing with her co-workers (such as, *e.g.*, firing them). However, "Title VII does not require that an employer fire all the 'Archie Bunkers' in its employ," *Torres v. Pisano*, 116 F.3d 625, 633–34 n. 7 (2d Cir.1997) (quoting *Davis v. Monsanto Chem. Co.*, 858 F.2d 345, 350 (6th Cir.1988)), although it does require the employer to take prompt and adequate measures to address the harassment that has occurred.

Defendant did not directly attempt to excuse its failure to take more effective action by referring to the Union contract, which, like most union contracts, probably required several levels of grievances followed by the ability to appeal punishment to an arbitrator. (There was reference to the fact that management could not even speak with the malfactors without having a union representative present.) The persons about whom Plaintiff complained were her "brothers" in the Union. Indeed, the man in whose house she lived and who was a co-worker of hers was the Vice President of the Local. Apparently, no serious complaints were lodged with the Union and no action was taken by it.

A very recent case from the Seventh Circuit has held that a company in Defendant's situation should be allowed to introduce evidence about the collective bargaining agreement to show that it made a good faith effort to enforce its sexual harassment policy within the restrictions of the labor agreement. *EEOC v. Indiana Bell Tel. Co.*, 214 F.3d 813, 822, 823 (7th Cir. 2000) (noting that Title VII does not always "trump" the provisions of a collective bargaining agreement). The Defendant here, however, made no attempt to introduce such evidence, so that any such possible defense has been waived.

Rather, the Defendant contends that the jury's verdict resulted from the failure of the Court to properly instruct the jury on the obligation of the employer with respect

to prompt remedial action. The Court charged the jury:

> The law is clear that an employer may not stand by and allow an employee to be subjected to a course of sexual harassment by co-workers. Rather, once an employer has knowledge of the harassment, the law imposes upon the employer a duty to take reasonable steps to eliminate the harassment. Whether an employer's response was reasonable has to be assessed from the totality of the circumstances. Factors to be considered are the gravity of the harm being inflicted upon the plaintiff, the nature of the work environment, and the nature of the employer's response in light of the employer's resources.

This language was taken almost verbatim from the Second Circuit's decision in *Distasio*, which held that whether an employer's response was reasonable must be assessed based upon the totality of the circumstances. 157 F.3d at 65. The factors to be considered in this analysis are the "gravity of the harm being inflicted upon the plaintiff, the nature of the employer's response in light of the employer's resources, and the nature of the work environment." *Id.* We find no error with this charge.

While it is true that an employer need not prove that it prevented harassment in order to demonstrate that it exercised reasonable care in preventing and correcting sexually harassing conduct, *Caridad v. Metro–North Commuter R.R.,* 191 F.3d 283, 295 (2d Cir.1999), the fact that so many incidents occurred following not only the reporting of the initial incidents, but also after the filing of the several CCHRO complaints, was sufficient to allow the jury to conclude that Defendant's attempts at remedial action were ineffective. Although there was evidence that Defendant responded to Plaintiff's complaints, the critical issue was whether its response was adequate. Plaintiff claims that the pattern of ineffectual action continued throughout the course of her employment. The

promptness and adequacy of an employer's response is generally a question of fact for the jury. *See Howley,* 217 F.3d 141, 156; *Richardson,* 180 F.3d at 441. There was sufficient evidence from which a jury could have reasonably concluded that Defendant's response was not adequate.

We conclude, therefore, that under the stringent standards for granting judgment as a matter of law, the Defendant's motion as it pertains to the compensatory damage award, must be denied. The alternative request for a new trial is denied for the same considerations.

### PUNITIVE DAMAGES

 The Civil Rights Act of 1991, 42 U.S.C. § 1981a(b)(1), provide that a complainant may recover punitive damages if she demonstrates that "the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." Before a jury may award punitive damages, the Defendant must have engaged in intentional and malicious conduct that demonstrates an indifference to the federally protected rights of the Plaintiff, in the face of a "perceived risk that its actions will violate federal law." *Kolstad v. American Dental Ass'n,* 527 U.S. 526, 119 S.Ct. 2118, 2125, 144 L.Ed.2d 494 (1999). Moreover, an employer may not be liable for punitive damages where it makes good faith efforts to enforce an anti-harassment policy. *Id.* at 2128.

 In *Dhyne v. Meiners Thriftway, Inc.,* 184 F.3d 983 (8th Cir.1999), the court affirmed the trial court's refusal to instruct the jury on punitive damages. There, the plaintiff alleged a campaign of sexual harassment by a co-worker. She repeatedly complained to her assistant manager, who addressed each complaint and spoke to the alleged harasser, ultimately threatening him with termination. The circuit court opined that

[t]here was no evidence suggesting evil motive or an intentional violation of federal law by the Meiners management. [The assistant manager] credited Dhyne's complaints. Though he failed to remedy the situation, he warned [the co-worker] to behave and eventually urged that [the co-worker] be fired. Dan Meiners responded decisively when Dhyne complained to him in June 1996. The Meiners management may have excessively delayed, but it was not guilty of acting "with malice or with reckless indifference."

*Id.* at 988.

Defendant had written procedures (Corporate Policies and Procedures, Standard Procedures, and Policy Statements) in its management manuals establishing Equal Employment Opportunity ("EEO") programs and employee complaint procedures. Defendant also had a staffed EEO office at the Windsor Site. New hires at Windsor went through an orientation program during which they were provided with an Employee Handbook and the Ethics Handbook, which described the EEO program and policy against sexual harassment and explained the employee complaint procedures. Plaintiff was familiar with these. Letters and memos regarding the company's EEO and sexual harassment policies were mailed to all employees, including plaintiff. Notices and memos were also posted on a number of bulletin boards. All supervisors had received four hours of EEO training, including two hours on sexual harassment. While the Defendant's actions may not have been effective in eliminating the harassment, as noted in the previous section, there is no indication that the Defendant was consciously acting in derogation of federal law.

Plaintiff argues that several times, in dealing with the CCHRO complaints, Defendant's personnel made certain denials, which warrant the imposition of punitive damages. There was no indication whatsoever that these denials were made in bad faith. Moreover, we do not see that the position taken by a company in defending itself before an administrative body can be the basis for assessing punitive damages as to events which took place on the job.

Like the Second Circuit in the recent case of *Weissman v. Dawn Joy Fashions, Inc.,* 214 F.3d 224, 234 (2d Cir.2000), we find that, even when the evidence at trial is viewed in Plaintiff's favor, we simply cannot find support in the record to conclude that the Defendant acted with "malice or with reckless indifference" to federal law. Consequently, as it pertains to an award of punitive damages, where the standards are greater than for an award of compensatory damages, we find that the Defendant is entitled to a judgment as a matter of law with respect to the award of punitive damages. We do note that our decision in this regard is perhaps immaterial in light of our subsequent decision with respect to the statutory cap on damages.

### REMITTITUR

Defendant next moves for a remittitur of the damage award, claiming that it was extraordinarily high and unwarranted. The damages were indeed high considering the nature of the Plaintiff's claims. Indeed, they were so high that they became a major item on Connecticut television evening news, where the Plaintiff was interviewed.

The most serious damages claimed by the Plaintiff were related to her reaction to the death of one of Defendant's employees, which had occurred several years later, at a facility 70 miles away, and as a result of an accident sustained in a fistfight between two male employees. Why this should have caused mental distress for the Plaintiff was never adequately explained. However, her medical witnesses did claim there was a connection. (An earlier treating psychologist thought her complaints were ridiculous and he was replaced).

More significant was Plaintiff's contention that, several years after leaving Defendant's employ, she had developed shin-

gles, which were threatening her vision in one eye. Her medical witnesses testified that shingles (technically "herpes zoster") were caused by a virus that caused plaintiff to develop chicken pox when she was a child, and remained latent in her body. (This is a commonly accepted medical view.) They testified that the mental suffering she had endured while working for the Defendant caused stress, resulting some years later in the shingles becoming active. We find that connection to be questionable particularly because Plaintiff had additional stressors after leaving Defendant's employ. The standard medical text, *The Merck Manual*, 17th edition, pages 1294–95, does not even mention emotional stress as being a cause for the activation of the shingles. However, we note that although the Defendant had an independent medical examination of the Plaintiff performed, and had a medical witness listed for trial, it did not call this witness. Consequently, the jury could have concluded that the shingles were proximately caused by the sexual harassment. Even accepting such a possibility, the compensatory damages of $650,000 were far too high. Were it not for the statutory cap discussed in the next section, which alone reduces the Plaintiff's damages by sixty percent (60%), we would be inclined to order a remittitur. However, in light of the cap on damages, we feel that no remittitur is necessary. Therefore, the motion for remittitur is denied.

### THE STATUTORY CAP

When Congress amended Title VII to allow both compensatory damages and punitive damages, it provided that the award even for large companies such as Defendant could not exceed $300,000. That cap obviously applies here. *See* 42 U.S.C. § 1981a(b)(3)(D).

Plaintiff argues that the cap is unconstitutional, relying on the Seventh Amendment. The Seventh Amendment provides that in suits at common law, the right of trial by jury "shall be preserved." This case did not involve a suit at common law or a right of action existing when the Constitution and amendments were ratified, but rather a suit on a federal statute where, until 1991, there had not even been a right to a jury trial. Plaintiff's constitutional argument has been specifically rejected. In *Pollard v. E.I. DuPont de Nemours Co.*, 213 F.3d 933, 945 (6th Cir. 2000), the Court held that the damage cap did not violate the separation of powers doctrine. "Congress created Title VII, and Congress may designate the remedies under Title VII. *See Northern Pipeline Construction v. Marathon Pipe Line Co.*, 458 U.S. 50, 83–84, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) .... The fact that the judicial branch is limited in the amount of damages which it may award does not mean that its ability to decide cases is being impaired by Congress." *Id.* The Court also held that the cap did not violate the Equal Protection Clause of the Fourteenth Amendment or the Due Process Clause of the Fifth Amendment. *Id.* at 945–47 (holding that a plaintiff asserting a gender discrimination claim to which the cap applied was not similarly situated with a claimant under 42 U.S.C. § 1981 to whom the cap did not apply). Similarly, the Court in *Means v. Shyam Corp.*, 44 F.Supp.2d 129, 133 (D.N.H.1999), held that the statutory cap did not violate the Equal Protection Clause of the Fourteenth Amendment. Therefore, the damages cap is not unconstitutional and must be applied in this case.

### PLAINTIFF'S CLAIM FOR PREJUDGMENT INTEREST

■ Plaintiff argues that she should be entitled to prejudgment interest on her compensatory damage award, citing *Luciano v. Olsten Corp.*, 912 F.Supp. 663, 677–78 (E.D.N.Y.1996), *aff'd*, 110 F.3d 210 (2d Cir.1997). That case and others like it awarded interest on back pay, not compensatory damages. There is no authority for awarding prejudgment interest on a com-

pensatory damage award and, consequently, Plaintiff's application is denied.

### CONCLUSION

Accordingly, Defendant's Motion for Judgment as a Matter of Law **[Doc. # 60]** is GRANTED as to the Jury's award of punitive damages. Defendant's Motion to Reduce the Damage Award to the Statutory Cap of $300,000 is GRANTED. In all other respects, Defendant's Motion for Judgment as a Matter of Law or, in the Alternative, Motion for a New Trial is DENIED.

Plaintiff's request for prejudgment interest set forth in her opposing papers is DENIED.

The Clerk will enter Judgment for the Plaintiff in the amount of $300,000, plus costs.

SO ORDERED.